## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DOERGE CAPITAL COLLATERALIZED )
BRIDGE FUND L.P., an Illinois Limited )
Partnership, ARMANDO ALONSO, an )
Individual, FRANCISCO ALONSO, an )
Individual, ERNEST DAVIS, JR., an )
Individual, and THOMAS HALL, an )
Individual, )
                                 )
             Plaintiffs, )
                                 )
             v. )
                                   )
MARCUS LEMONIS, an Individual, and )
FREEDOMROADS LLC, a Limited Liability )
Company, )
                                   )
           Defendants. )

Case No. 04 A 04207

Judge Bruce W. Black

Removed from Circuit Court of the
Nineteenth Judicial Circuit
(Lake County), Case No. 04 L 873

**F I L E D**
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

JAN 0 5 2005

KENNETH S. GARDNER, CLERK
PS REP. - RD

### NOTICE OF MOTION

TO:    Robert A. Carson
        Christopher J. Horvay
        Christina B. Conlin
        Gould & Ratner
        222 North LaSalle Street, Eighth Floor
        Chicago, IL 60601

        PLEASE TAKE NOTICE that on January 13, 2005 at 9:30 a.m. or as soon
thereafter as counsel may be heard, we shall appear before the Honorable Judge Black, in
Courtroom 615, in the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois
60604, and then and there present, Defendants' **Motion To Transfer To The United States
District Court For The District Of Delaware**, a copy of which is herewith served upon you.

        Respectfully submitted,

        _One of the Attorneys for Defendants_
        _Marcus Lemonis and FreedomRoads LLC_

Arthur J. Howe
Ian H. Fisher
Schopf & Weiss LLP
312 W. Randolph Street, Suite 300
Chicago, Illinois 60606
(312) 701-9300

### IN THE UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOERGE CAPITAL COLLATERALIZED )
BRIDGE FUND L.P., an Illinois Limited )
Partnership, ARMANDO ALONSO, an )
Individual, FRANCISCO ALONSO, an )
Individual, ERNEST DAVIS, JR., an )
Individual, and THOMAS HALL, an )
Individual, )

        Plaintiffs,    )

v. )

MARCUS LEMONIS, an Individual, and )
FREEDOMROADS LLC, a Limited Liability )
Company, )

        Defendants.    )

Case No. 04 A 04207

Judge Bruce W. Black

Removed from Circuit Court of the
Nineteenth Judicial Circuit
(Lake County), Case No. 04 L 873

F I L E D
UNITED STATES BANKRUPTCY
NORTHERN DISTRICT OF ILLINOIS
JAN 05 2005
KENNETH S. GARDNER, CLERK
PS REP. - RD

### MOTION TO TRANSFER TO THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

Defendants Marcus Lemonis and FreedomRoads LLC, by their attorneys,

respectfully move the Court to transfer this action to the United States District Court for the

District of Delaware where Holiday RV Superstores, Inc.'s Chapter 11 bankruptcy is currently

pending. Defendants seek this transfer under 28 U.S.C. § 1412, or alternatively under 28 U.S.C.

§ 1404, and state as follows:

### FACTUAL BACKGROUND

According to Plaintiffs, "[t]his action relates to an insolvent and now bankrupt

corporation known as Holiday RV Superstores, Inc." Compl. ¶ 1. Plaintiffs owned recreational

vehicle dealerships, which they sold to Holiday RV Superstores, Inc. (the "Debtor") in exchange

for cash and a convertible promissory note, or directly in exchange for equity. *Id.* ¶¶ 14, 152.

None of the dealerships at issue are in Illinois; rather, they are located in Prosperity, West

Virginia; Ocala, Florida; Inverness, Florida; and Lexington, Kentucky. *Id.* ¶¶ 91, 121, 151.

According to Plaintiffs, the Defendants allegedly induced Plaintiffs to exercise their options to convert the debt owed to them by the Debtor into equity. *Id.* ¶¶ 94-95, 123, 127, 152. Thus, Plaintiffs each ended up owning equity in the Debtor.[1]

On October 20, 2003, the Debtor filed a voluntary petition for bankruptcy in the U.S. Bankruptcy Court for the District of Delaware. On August 27, 2004, the Delaware bankruptcy court confirmed the plan of reorganization. Under the plan, all of the property of the Debtor vested in the reorganized Holiday RV Superstores, "free and clear of all liens, charges, Claims, encumbrances, or Equity Interests." *See Findings of Fact, Conclusions of Law and Order,* No. 03-13221 (MFW) at 6, ¶ 6 (Bankr. D. Del. Aug. 27, 2004) (mem. & order) (Ex. 1 hereto). In addition, the Delaware bankruptcy court canceled Plaintiffs' equity interests in the Debtor. *Id.* at 7, ¶ 9. The secured lenders, including a subsidiary of FreedomRoads, contributed $500,000 to the Debtor's estate, providing funds for the Debtor's creditors. *See Second Am. Plan of Reorg. of Holiday RV Superstores, Inc.,* §6.1 (Ex. 2 hereto) To resolve the secured lenders' prime position, the subsidiary of FreedomRoads received all of the common stock of the reorganized Holiday RV Superstores. *See id.* § 6.4.[2]

To ensure that the plan was properly administered, the Delaware bankruptcy court retained "exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case, the Plan" and other, related issues. *Order,* Ex. 1, at 9, ¶ 17. It also permanently enjoined plaintiffs from pursing "any encumbrance of any kind … against the property of the Debtor…." *Id.* at 10, ¶ 19. This injunctive safeguard "extend[s] to all successors of the Debtor." *Id.*

---

[1]    One plaintiff, a Delaware limited partnership, claims to have made an "investment" in the Debtor, although Plaintiffs have not explained whether this took the form of an unsecured loan to the Debtor or an equity purchase in the Debtor. Compl. ¶¶ 2, 64, 65.

[2]    Defendant FreedomRoads LLC was not a lender to the Debtor and did not receive any equity in the Debtor nor any assets of the Debtor. Rather, FreedomRoads LLC owned FreedomRoads Finance Company, LLC (f/k/a Holiday Finance Company, LLC), which was a secured lender and is defined in the plan as "FreedomRoads Minnesota." *See id.* at Ex. A, 4.

Not only did the Delaware bankruptcy court's permanent injunction protect the Debtor's successors – which, presumably, would include whatever FreedomRoads entity that Plaintiffs claim is liable to them as a "successor" – it also was binding upon all parties "making an appearance the Chapter 11 Case" in Delaware. *Id.* at 6, ¶ 5. Over half of Plaintiffs here have appeared in the Chapter 11 Case. In fact, the non-individual Plaintiff was a member of the Official Committee of Unsecured Creditors and both Alonso Plaintiffs filed proofs of claim, which they later withdrew due to settlement. *See* Exs. 3-5.

Shortly after the Delaware bankruptcy court confirmed the plan of reorganization and transferred the shares of the reorganized Holiday RV Superstores to a subsidiary of FreedomRoads, Plaintiffs brought their complaint in state court seeking to impose successor liability on FreedomRoads. *See* Compl. at Counts III, VI, IX, XII. Plaintiffs rest their claim of successor liability upon FreedomRoads' alleged receipt of the Debtor's assets, which supposedly occurred through the confirmed plan of reorganization. *Id.*

Plaintiffs also bring claims against Lemonis, who was the CEO and Chairman of the Board of the Debtor. Compl. ¶ 1. Plaintiffs allege that he supposedly breached his fiduciary duties as an officer of the Debtor owed to them as creditors of the Debtor. *See, e.g., id.* ¶ 80.

Plaintiffs also allege that Lemonis, while an officer of the Debtor, supposedly made fraudulent statements to Plaintiffs and caused the Debtor to enter into transactions purportedly designed to "take the company private." *See, e.g., id.* ¶ 36. Plaintiffs claim that Lemonis allegedly defrauded them by causing the Debtor to become insolvent and indebted to FreedomRoads, which then purportedly used its position to obtain ownership of the Debtor (or

its assets) through the bankruptcy. *Id.* ¶¶ 75, 91, 130, 155.[3]  In short, the alleged injury could not

have happened absent the Debtor's bankruptcy and the confirmed plan of reorganization.

On December 3, 2004, Lemonis and FreedomRoads removed the matter to this

Court.

## ARGUMENT

## I.  THE COURT SHOULD DECIDE THIS MOTION BEFORE CONSIDERING REMAND.

The Court should transfer this case to the District of Delaware before ruling on

remand or abstention.  As the Court has previously explained, "[t]he majority of courts

considering the order in which to consider transfer or remand motions have overwhelmingly

decided to hear transfer motions first." *Pacific Dunlop Holdings (Europe) Ltd. v. Exide Holding

Europe*, No. 02 A 1106, at 7 (Bankr. N.D. Ill. Feb. 4, 2003) (mem. & op.) (Sonderby, B. J.)

(Ex. 6 hereto).

Transferring this case will not prevent Plaintiffs from presenting their motion to

remand; the motion will simply be decided by the court that has been handling the administration

of the Debtor's estate.  If the Delaware bankruptcy court denies Plaintiffs' motion, the parties

will nonetheless have a full opportunity to litigate their disputes before that court.  If it grants

Plaintiffs' motion, the dispute will return to Illinois state court.

For example, in *Pacific Dunlop Holdings*, the Illinois state court stayed its

proceeding against the bankrupt defendant pursuant to the automatic stay, but allowed the suit to

continue against the non-bankrupt defendants.  Ex. 6 at 2-3.  These defendants removed the case

to this Court and requested transfer to the Delaware bankruptcy court, which was administering

---

[3]     Although Plaintiffs do not explain how FreedomRoads allegedly came to own the
Debtor's assets, the fact is that the Delaware bankruptcy court awarded equity in the reorganized Debtor
to FreedomRoads Finance Company, LLC, of which the Court may take judicial notice. *See* Plan, Ex. 2.

4

the estate of the bankrupt defendant. *Id.* at 3-4. The plaintiffs objected, requesting that their

remand motion be decided first. *Id.* The Court nonetheless transferred the case without deciding

the motion to remand, holding that "when the transferee court is the court in which the

bankruptcy is pending, such courts are most familiar with the debtor's reorganization and

therefore best equipped to consider the issues of remand and abstention." *Id.* at 7-8 (citing *In re*

*Allegheny Health, Educ. & Research Found.*, No. 98-25773, 1999 WL 1033566, *1 (Bankr. E.D.

Pa. Nov. 10, 1999); *Aztec Indus. v. Standard Oil Co.*, 84 B.R. 464 (Bankr. N.D. Ohio 1987); *In*

*re Covent Guardian Corp.*, 75 B.R. 346 (Bankr. E.D. Pa. 1987); *Consolidated Lewis Invest.*

*Corp. v. First Nat'l Bank of Jefferson Parish*, 74 B.R. 648, 651 (E.D. La. 1987); *Colarusso v.*

*Burger King Corp.*, 35 B.R. 365, 367 (Bankr. E.D. Pa. 1984)).

   Likewise, in *Consolidated Lewis Investments*, 74 B.R. at 651, the plaintiffs sued

the defendant for wrongful encumbrance in a state court within the Eastern District of Louisiana.

The plaintiffs later filed a bankruptcy petition in the Middle District of Louisiana. The defendant

removed the state action and moved to transfer the proceeding to the home bankruptcy court.

The plaintiffs opposed the transfer, claiming that the court should first consider remand. The

court disagreed with the plaintiffs and transferred the case under Section 1412 without

considering remand. The court held:

> the interest of justice is best served by allowing the Bankruptcy Court for
> the Middle District the opportunity to review all lawsuits with a nexus to
> [debtor]'s bankruptcy. . . . [T]he question of whether the instant action is a
> core proceeding must be decided by the [transferee bankruptcy court].
> Although plaintiffs have asked this court to remand this action or in the
> alternative to abstain, to do so would be to deprive the [transferee
> bankruptcy court] of a § 157(b)(3) determination.

*Id.* at 651.

   Using similar rationale, the Northern District of Ohio Bankruptcy Court

transferred a breach of contract action under Section 1412 to the Northern District of Oklahoma,

despite a pending motion to remand. *Aztec Indus.*, 84 B.R. at 467. The transferring court
deferred the remand decision to the court in which the bankruptcy was pending, explaining that:

> the Court which would try the case can better evaluate all the
> interests involved, and determine its own expertise in the particular
> areas of the law which form the basis of the action, as well as its
> own scheduling and time constraints. This Court's speculation on
> these matters would not be an adequate substitute for a
> knowledgeable determination based upon the actual facts and
> circumstances. Moreover, allowing the Oklahoma Court to rule on
> the remand issues minimizes the potential conflicts which could
> arise due to differences in controlling authority between the
> Courts.

*Id.*

Numerous other courts have also transferred cases before considering issues of
remand, explaining that the court where the bankruptcy is pending should decide such issues.
*See, e.g., Hohl v. Bastian*, 279 B.R. 165, 177-178 (W.D. Penn. 2002) (instructing bankruptcy
court to reconsider denial of transfer motion because "the home court presumption provides that
the court in which the bankruptcy case itself is pending is the proper venue for adjudicating all
related litigation, including those suits which have been filed in other state or federal courts"); *In
re Wedlo, Inc.*, 212 B.R. 678, 679 (Bankr. M.D. Ala. 1996) ("the bankruptcy court in which the
chapter 11 case is pending is in the best position to determine the issues underlying the motion to
remand, abstain, or dismiss"); *Covenant Group*, 75 B.R. at 347 (transferring proceeding "related
to" a title 11 case to the home court before considering abstention doctrines); *Colarusso*, 35 B.R.
at 367 (the "home court should be the court which determines the question of remand").

## II.    THE DELAWARE DISTRICT IS THE MOST APPROPRIATE VENUE AND IN THE BEST POSITION TO RULE ON PENDING MOTIONS.

This Court should transfer the entire case, including consideration of Plaintiffs' pending motion to abstain and remand, to the District of Delaware pursuant to 20 U.S.C. § 1412.[4]  Alternatively, it should transfer this matter under § 1404.

### A.    The Court Should Transfer Under Section 1412.

This Court should transfer this case to Delaware under § 1412 in accordance with the interests of justice, as well as the convenience of the parties and witnesses.

#### 1.    Strong public policy calls for transfer to the Delaware bankruptcy court.

In deciding transfer is appropriate under Section 1412, the Court may consider the convenience of the parties and witnesses, but should give the greatest weight to the interests of justice, which militate in favor of the home bankruptcy court. *Pacific Dunlop Holdings*, Ex.6, at 10; *see Commonwealth Oil Refining Co.*, 596 F.2d 1239 (5th Cir. 1979) (most deference given to efficient and economic administration of the estate); *In re Pinehaven Asssoc.*, 132 B.R. 982 (E.D.N.Y. 1991) (same); *Bastian*, 265 B.R. at 178 (transferring case to bankruptcy court because it is "well-positioned to determine how and to what extent the outcome [of the state case] will affect administration of the bankruptcy estate "); *see also In re Enron Corp.*, 284 B.R. 376, 387 (Bankr. S.D.N.Y. 2002) ("the factor given the most weight is the promotion of the economic and efficient administration of the estate."). This is especially true here, where the administration of the Debtor's estate and the orders of the home bankruptcy court are directly implicated.

---

[4]    By standing order of the United States District Court for the District of Delaware, this action would be immediately referred to the United States Bankruptcy Court for the District of Delaware.

### 2. The Delaware bankruptcy court is also appropriate for the convenience of the parties and the witnesses.

Although less important, the Court may also consider the convenience of the parties and the witnesses. Here, the Delaware bankruptcy court is just as convenient a venue as this Court. Notably, the properties sold by Plaintiffs to the Debtor, which resulted in the relationships underlying this suit, are not located in this District. Rather, they are on the East Coast and in Kentucky, much closer to the Delaware bankruptcy court.

Likewise, none of the four individual Plaintiffs are even Illinois residents. They claim to reside in West Virginia, Florida, and Kentucky, which are closer to Delaware than they are to Illinois. Although it claims to have a headquarters in this District, the non-individual Plaintiff itself is a Delaware limited partnership.[5] Moreover, at least a majority of the Plaintiffs have already appeared in the pending bankruptcy case in Delaware.

In fact, the only connection to this District exists among the Defendants. They, however, waive the limited convenience of a local forum for the strong policy and the judicial economy of having the claims resolved by the home bankruptcy court. Indeed, even if this suit were to be litigated in this District, the Defendants would nonetheless be forced to consider making their claims for indemnification or rescission against the Debtor in the Delaware bankruptcy court.

Furthermore, key issues in Plaintiffs' complaint against FreedomRoads concern events that occurred in the Delaware bankruptcy court. For example, what was the effect of the court's conveyance to FreedomRoads of the reorganized Holiday RV Superstores, Inc. "free and clear of all liens, charges, Claims, encumbrances, or Equity Interests" and the cancellation of

---

[5]    Despite Plaintiffs' recent claim that the LLP is an Illinois limited liability partnership, Plaintiffs pled in their complaint that it is a Delaware entity (*Compl.* ¶ 2), a fact confirmed by the Delaware Secretary of State (*see* Ex. 7 hereto). Plaintiffs have not identified the partners of this entity.

Plaintiffs' interests in the Debtor? How can Plaintiffs assert claims of successor liability arising from the assets of the Debtor when the Delaware bankruptcy court already enjoined all attempts to encumber the property of the Debtor and extended its injunction to cover all of the Debtor's successors? Don't all of the unsecured creditors share Plaintiffs' claim that Lemonis allegedly breached his fiduciary duty to creditors?

Thus, the Court should transfer this action under Section 1412 to the District of Delaware.

**B.    The Court May Alternatively Transfer Under Section 1404.**

Alternatively, the Court may transfer this case to the District of Delaware under Section 1404. A court considering transfer under this section generally looks to the same factors as under Section 1412 – *i.e.*, the interests of justice and the convenience to parties and witnesses – but also considers whether the transferee court would be an appropriate venue. *City of Liberal, Kansas v. Trailmobile Corp.*, 316 B.R. 358, 362 (Bankr. D. Kan. 2004).

Here, the transferee court is an appropriate venue under Section 1409, which permits the filing of an action arising under, arising in, or related to a bankruptcy case to be filed in the district where the bankruptcy is pending. 28 U.S.C. § 1409. Thus, transfer is also appropriate under Section 1404.

**III.    THE COURT HAS SUFFICIENT JURISDICTION TO DECIDE THIS MOTION.**

This Court has jurisdiction to decide whether to transfer the case for two reasons. First, as explained in Defendants' Notice of Removal, the underlying state claims are core proceedings under 28 U.S.C. § 157. For example, Plaintiffs seek to impose successor liability on FreedomRoads arising from its purchase of the debtor's assets from the bankruptcy estate "free and clear" of any claims and, thus, the claim arises under Title 11. *See In re Korhumel Indus.*, 103 B.R. 917, 942 (Bankr. N.D. Ill. 1989) ("suit arose under Title 11" where it required

9

determination of whether purchaser of debtor's assets "free and clear" from bankruptcy estate could be liable as successor). In fact, Plaintiffs' theory will require interpretation of the Delaware bankruptcy court's confirmation of the plan of reorganization that passed the Debtor's assets unencumbered to FreedomRoads in exchange for, among other things, half a million dollars and resolution of the Debtor's secured debt. Moreover, Plaintiffs' current attempt to sue FreedomRoads is itself a violation of the Delaware bankruptcy court's injunction against pursuing "any encumbrance of any kind ... against the property of the Debtor." The Court clearly has the authority to transfer core proceedings.

Second, the Court may transfer a case under Section 1412 if it meets a minimum threshold for jurisdiction of "related to" title 11. *See Pacific Dunlop Holdings*, Ex.6, at 6-7. The Court need not -- and, as explained above, should not – consider abstention prior to deciding a motion to transfer. Plaintiffs' complaint is similar to the situation alleged in *City of Liberal, Kansas*, 316 B.R. at 363. There, the City of Liberal filed suit against parties related to a bankrupt entity alleging that they had fraudulently conspired to remove the bankrupt's assets and then obtain a discharge of the bankrupt's debts through the bankruptcy. *Id.* Even though the City did not name the bankrupt as a defendant, the court concluded that the matter was, at minimum, "related to" the bankruptcy case and transferred the matter to the court in which the bankruptcy was pending. *Id.*

Indeed, the very first sentence of Plaintiffs' allegations here (apparently filed before Plaintiffs were concerned about removal of the case) asserts this Court's jurisdiction:

> This action **relates to an insolvent corporation** known as Holiday RV
> Superstores, Inc.

Compl. ¶ 1 (emphasis added).

Additionally, Plaintiffs have sued Lemonis for his alleged conduct as an officer of the Debtor and for acts he allegedly caused the Debtor to undertake prior to the bankruptcy.

They similarly claim that he breached fiduciary duties he allegedly owed to them due to his relationship with the Debtor. As such, Plaintiffs' claims against Lemonis flow through the Debtor and are at least "related to" the Debtor's bankruptcy. *See Hohl*, 279 B.R. at 177-178 (suit against debtor's officer for alleged wrongs committed as corporate officer was, at least, "related to" title 11); *In re U.S. Air Duct Corp.*, 8 B.R. 848, 852 (Bankr. N.D.N.Y. 1981) (claim against president of debtor corporation that arose through debtor's acts was at least "related to" title 11).

Moreover, Plaintiffs' claims concerning an alleged breach of Lemonis' fiduciary duty to them as creditors is a wholly derivative claim of the Debtor. *Production Resources Group, LLC v. NCT Group, Inc.*, No. C.A. 114-N, 2004 WL 2647593 *3, *13 (Del. Ch. Nov. 17, 2004) (creditors' claims for breach of fiduciary duty are derivative). Thus, they implicate the Debtor's estate. Plaintiffs likewise argue that Lemonis allegedly did not properly dispose of the Debtor's assets, a claim that could be asserted on behalf of all creditors. *See, e.g.,* Compl. ¶¶ 40, 46, 50, 57.

In their fraud counts, Plaintiffs claim that they would not have converted their unsecured notes into equity but for Lemonis' alleged conduct, raising the obvious question of Plaintiffs' damages due to the conversion; if Plaintiffs were to prevail on their claim, they would be entitled to recover as damages what they would have received in the bankruptcy as unsecured creditors. All of these questions affect the bankruptcy estate and are, at least, related to title 11.

## CONCLUSION

For the reasons set forth above, Defendants Marcus Lemonis and FreedomRoads LLC respectfully request that this action be transferred pursuant to 28 U.S.C. § 1412 or § 1404 to the United States District Court for the District of Delaware where Holiday RV Superstores, Inc.'s bankruptcy is currently pending.

Dated:  January 5, 2005                     Respectfully submitted,

                                            One of the Attorneys for Defendants
                                            Marcus Lemonis and FreedomRoads LLC

Arthur J. Howe
Ian H. Fisher
Schopf & Weiss LLP
312 W. Randolph Street, Suite 300
Chicago, Illinois  60606
(312) 701-9300

12

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| HOLIDAY RV SUPERSTORES, INC., | : Case No. 03-13221 (MFW) |
| | : |
| Debtor. | : RE: Dkt. No. 160 |
| | : |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER PURSUANT TO 11 U.S.C. § 1129 AND FED. R. BANKR. P. 3020 CONFIRMING SECOND AMENDED PLAN OF REORGANIZATION OF HOLIDAY RV SUPERSTORES, INC.

WHEREAS, Holiday RV Superstores, Inc. (the "Debtor") filed the Second Amended Plan of Reorganization of Holiday RV Superstores, Inc., dated July 12, 2004 (the "Plan")[1]; together with the Second Amended Disclosure Statement for Second Amended Plan of Reorganization of Holiday RV Superstores, Inc., dated July 12, 2004 (the "Disclosure Statement"); and

WHEREAS, on July 14, 2004, the Court entered the Disclosure Statement Order approving the Disclosure Statement, approving the Debtor's forms of Ballots, solicitation and tabulation procedures, establishing the Voting Deadline and objection deadline as 4:00 p.m. on August 18, 2004, scheduling the Confirmation Hearing for August 25, 2004 at 9:30 a.m., and approving the forms of notice to be sent to each Class of Claims or Equity Interest holders, including the notice of the Confirmation Hearing (the "Confirmation Hearing Notice"); and

WHEREAS, Delaware Claims Agency, LLC, the Debtor's tabulation and balloting agent, transmitted the Disclosure Statement, the Plan, the Disclosure Statement

---

[1]    Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Plan.

1

EXHIBIT 1

Order, the Confirmation Hearing Notice and related solicitation materials in compliance with the Disclosure Statement Order; and

WHEREAS, the Debtor filed the Affidavit of Stephanie M. Noble Director of Case Management for Delaware Claims Agency, LLC (the "DCA Affidavit"), attesting to the tabulation of all Ballots received from holders of Claims entitled to vote on the Plan and attesting to the results of the tabulation which satisfied the requirements in section 1126 of the Bankruptcy Code; and

WHEREAS, the Debtor filed the Declaration of Anthony D. Borzillo in Support of Confirmation of Second Amended Plan of Reorganization of Holiday RV Superstores, Inc. (the "Borzillo Declaration"); and

WHEREAS, the Confirmation Hearing was held on August 25, 2004;

NOW, THEREFORE, the Court having considered the DCA Affidavit and the Borzillo Declaration, the record of the Confirmation Hearing and the entire record of this Chapter 11 Case, and after due deliberation thereon;

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      This Court has jurisdiction over this Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

B.      The Disclosure Statement, Plan, Confirmation Hearing Notice, Disclosure Statement Order, Ballots and related solicitation materials were transmitted and served in compliance with the Disclosure Statement Order and the Bankruptcy Rules and such transmittal and service was adequate and sufficient. Adequate and sufficient notice of the

118790.01600/40143392v4

Confirmation Hearing was given in compliance with the Bankruptcy Rules and the

Disclosure Statement Order, and no further notice is required.

      C.     Votes to accept or reject the Plan have been solicited, in good faith, and in

a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure

Statement Order, and all other applicable rules, laws and regulations.

      D.     The Plan complies with all applicable provisions of the Bankruptcy Code

as required by section 1129(a)(1) of the Bankruptcy Code.

      E.     The Debtor and its agents have complied with all applicable provisions of

the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code.

      F.     The Debtor has proposed the Plan in good faith and not by any means

forbidden by law thereby satisfying section 1129 (a)(3) of the Bankruptcy Code.

      G.     Any payments made or to be made by the Debtor for services or for costs

and expenses in connection with the Chapter 11 Case, or in connection with the Plan and

incident to the Chapter 11 Case, have been approved by, or are subject to the approval of,

the Court, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

      H.     The Debtor has complied with section 1129(a)(5) of the Bankruptcy Code.

The Debtor has disclosed the identity and affiliations of the individuals who will serve as

the directors and officers of the Reorganized Debtor after confirmation of the Plan.  The

appointment of and/or continuance in such offices by the individuals identified in the

Plan and Disclosure Statement  is are consistent with the interests of creditors and with

public policy.  The Debtor has disclosed the identity of any insiders to be employed or

retained by the Reorganized Debtor and the nature of any compensation for such insiders.

3

I.     Section 1129(a)(6) of the Bankruptcy Code is inapplicable. The Debtor is not subject to any governmental regulatory commission with jurisdiction, after confirmation of the Plan, over the rates of the Debtor.

J.     The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. With respect to each Impaired Class of Claims, each holder of an Impaired Claim has accepted the Plan or will receive or retain under the Plan on account of such Impaired Claim property of a value that is not less than the amount such holder would receive or retain if the Debtor was liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

K.     Because holders of Class 4 Non-Debtor Subsidiary Claims and Class 5 Equity Interests will not receive any distributions under the Plan, they are deemed to have rejected the Plan. As such, the requirements of section 1129(a)(8) have not been met, thus requiring application of section 1129(b) of the Bankruptcy Code.

L.     The treatment of Administrative Expenses, Priority Tax Claims and Priority Claims under the Plan complies with the requirements of section 1129(a)(9)(A), (B) and (C) of the Bankruptcy Code.

M.     The Plan complies with the requirements of section 1129(a)(10) of the Bankruptcy Code. As indicated in the DCA Affidavit and the Borzillo Declaration, more than a majority in number and two-thirds in dollar amount of the holders of Class 3 Claims who were entitled to accept or reject the Plan, without including the acceptance by any insider, have voted to accept the Plan.

N.     The Plan complies with section 1129(a)(11) of the Bankruptcy Code. Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtor.

4

O.     All fees under 28 U.S.C. § 1930 presented to date have been paid or provided for under the Plan, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

P.     The Debtor does not have any "retiree benefits" programs; as such term is defined in section 1114 of the Bankruptcy Code. Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable.

Q.     The Plan is confirmable under Section 1129(b) of the Bankruptcy Code despite the deemed rejection of the Plan by Class 4 Non-Debtor Subsidiary Claims and Class 5 Equity Interests. The Plan does not discriminate unfairly and the Plan is fair and equitable with respect to each Impaired Class of Claims and Equity Interests that has not accepted the Plan. With respect to Class 4 Non-Debtor Subsidiary Claims and Class 5 Equity Interests, the holder of any Claim or Equity Interest that is junior to the Claims of Class 4 Non-Debtor Subsidiary Claims and Class 5 Equity Interests will not receive or retain under the Plan on account of such junior Claim or Equity Interest any property.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT,**

1.     The Plan is hereby is confirmed pursuant to section 1129 of the Bankruptcy Code.

2.     Pursuant to Section 1142(b) of the Bankruptcy Code, (a) Debtor (b) the Reorganized Debtor (c) the Creditor Trustee, and (d) all other necessary parties are authorized and empowered to (x) execute and deliver any instrument, agreement or document and (y) perform any act that is necessary, desirable, or required to comply with the terms and conditions of the Plan and the Creditor Trust Agreement.

5

3.     The Amended and Restated Certificate of Incorporation of Holiday RV Superstores, Inc. attached to the Plan as Exhibit "E" and the Amended and Restated Bylaws of Holiday RV Superstores, Inc. attached to the Plan as Exhibit "F" are hereby approved.

4.     The initial board of directors of the Reorganized Debtor, as identified in the Disclosure Statement and the Plan is hereby approved.

5.     Pursuant to section 1141 of the Bankruptcy Code, as of the Effective Date, the provisions of the Plan (including the exhibits to, and all documents and agreements executed pursuant to the Plan), the Creditor Trust Agreement and the Confirmation Order shall be binding on (a) the Debtor, (b) the Reorganized Debtor, (c) the Creditor Trust, (d) all holders of Claims against or Equity Interests in the Debtor, whether or not Impaired under the Plan and whether or not, if Impaired, such holders accepted the Plan, (e) each Person or Entity acquiring property under the Plan, (f) any other party in interest, (g) any Person or Entity making an appearance in the Chapter 11 Case, and (h) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians.

6.     On the Effective Date, except as otherwise provided in the Plan and Creditor Trust Agreement, all the property of the Debtor's estate shall vest in the Reorganized Debtor free and clear of all liens, charges, Claims, encumbrances, or Equity Interests.  On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire or dispose of its property without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

6

7.    The issuance of New Common Stock contemplated by the Plan is hereby authorized without further act or action under applicable law, regulation, order or rule.

8.    Pursuant to section 1145 of the Bankruptcy Code, the issuance of New Common Stock pursuant to the Plan and this Confirmation Order shall be exempt from the registration requirements of section 5 of the Securities Act of 1933, as amended and any state or local law requiring registration prior to such issuance.

9.    On the Effective Date, except to the extent otherwise provided in the Plan, all notes (excluding the Amended Mortgage and Note), instruments, debentures, certificates and other documents evidencing Claims and Equity Interests in the Debtor shall be canceled and deemed terminated.

10.    Pursuant to section 1146(c) of the Bankruptcy Code, any issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan, shall not be taxed under any law imposing a stamp tax or similar tax.

11.    Section 12.2 of the Plan is hereby modified and restated to read as follows:

12.2.    **Release.** On the Effective Date, the Debtor, for and on behalf of its estate, and the Reorganized Debtor, unconditionally, irrevocably, and forever, release: (a) the following officers and directors of the Debtor, Paul Schedler, Anthony D. Borzillo and Larry J. Hughes, and (b) the Lenders, their affiliates and any of their respective members, officers, directors, employees, attorneys, advisors and agents (collectively, the "Releasees"), from any and all claims, causes of action, suits, debts, obligations, demands, covenants, contracts, promises, agreements, liabilities, controversies, losses, costs, expenses, attorneys' fees, suits, actions, counterclaims and defenses, whatsoever, at law or in equity existing as of the Effective Date, whether known or unknown which the Debtor and the Reorganized Debtor now have or may have against the Releasees. The Creditor Trust shall be bound, to the same extent the Debtor and the Reorganized Debtor are bound by the foregoing release.

7

12.     Any Person or Entity that has a Claim against the Debtor by virtue of the rejection of an executory contract or unexpired lease (a "Rejection Damages Claim") pursuant to Article X of the Plan shall file a Rejection Damages Claim with Delaware Claims Agency, P.O. Box 515, Wilmington, Delaware, 19899, Attn: Holiday RV Claims Department or deliver the original Rejection Damages Claim by messenger or overnight courier to Delaware Claims Agency LLC, 103 West 7th Street, Wilmington, Delaware, 19801, Attn: Holiday RV Claims Department, and serve counsel for the Creditor Trust on or before thirty (30) days after service of this Confirmation Order.

13.     Except as otherwise ordered by this Court, all holders of asserted Administrative Expenses not paid prior to the Effective Date must submit requests for payment of such Administrative Expenses on or before the thirtieth (30th) day after the Effective Date or be forever barred from doing so or from seeking to collect, enforce or recover on any Administrative Expense. All applications for final allowance of compensation and reimbursement of professional fees and expenses pursuant to sections 327, 328, 330, 331, or 1103 of the Bankruptcy Code for services rendered in connection with the Chapter 11 Case prior to the Effective Date must be filed and served on counsel for the Debtor, and the United States Trustee, no later than the thirtieth $(30^{th})$ day after the Effective Date.

14.     On or before the tenth $(10^{th})$ business day following the date of entry of this Confirmation Order, the Debtor or its agent shall serve notice of entry of this Confirmation Order pursuant to Bankruptcy Rules 2002 and 3020.

15.     Within ten (10) business days following the occurrence of the Effective Date, the Debtor, the Creditor Trust, or their agents shall file a notice of the occurrence

8

of the Effective Date and shall serve a copy of such notice on all Creditors and parties in interest.

16.     Notwithstanding any contrary provision in the Plan, the Claim of the Citrus County Tax Collector for 2003 real property taxes in the amount of $8,233.55 shall be an Allowed Secured Claim which shall be paid in full in Cash from the Aggregate Funding Pool as soon as practicable after the Effective Date. Citrus County real property taxes for 2004 shall be paid in the ordinary course of business by the Reorganized Debtor when due. Further, notwithstanding any contrary provision in the Plan or this Order, Citrus County's statutory lien on the Debtor's and Reorganized Debtor's real property shall not be discharged by confirmation of the Plan.

17.     This Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case, the Plan, the Creditor Trust and the Creditor Trust Agreement to the fullest extent permitted by law, including, among other things, jurisdiction over the matters set forth in Article XIV of the Plan.

18.     The failure specifically to include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

19.     Except as otherwise expressly provided in the Plan, any instruments executed in connection therewith, or a separate order of the Court, all Persons and Entities who have held, hold or may hold Claims against or Equity Interests in the Debtor are permanently enjoined, on or after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest; (ii) the enforcement, attachment, collection or recovery by

9

any manner or means of any judgment, award, decree or order against the Debtor, the Reorganized Debtor, or the Creditor Trust on account of any such Claim or Equity Interest; (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtor, the Reorganized Debtor, or the Creditor Trust or against the property or interests in property of the Debtor, the Reorganized Debtor or the Creditor Trust on account of any such Claim or Equity Interest; and (iv) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtor, the Reorganized Debtor or the Creditor Trust or against the property or interests in property of the Debtor, the Reorganized Debtor, or the Creditor Trust on account of any such Claim or Equity Interest.  Such injunction shall extend to successors of the Debtor, including, without limitation, the Reorganized Debtor and the Creditor Trust, and its property and interests in property.

DATED: August 2१, 2004
Wilmington, Delaware

The Honorable Mary F. Walrath
Chief Judge, United States Bankruptcy Court

10

118790.01600/40143392v4

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| HOLIDAY RV SUPERSTORES, INC., | : Case No. 03-13221 (MFW) |
| | : |
| Debtor. | : |
| | : |

## SECOND AMENDED PLAN OF REORGANIZATION
## OF HOLIDAY RV SUPERSTORES, INC.

BLANK ROME LLP
Mark J. Packel (DE No. 4048)
Elio Battista, Jr. (DE No. 3814)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

Counsel for Holiday RV Superstores, Inc.
Debtor and Debtor-in-Posession

## TABLE OF CONTENTS

I.     Definitions ........................................................................................................... 1
       1.1.   Terms Defined in the Plan of Reorganization ..................................... 1
II.    Treatment of Administrative Expenses and Priority Tax Claims ............................ 1
       2.1.   Treatment of Administrative Expenses .................................................. 1
       2.2.   Treatment of Priority Tax Claims ......................................................... 1
III.   Classification of Claims and Equity Interests ...................................................... 1
IV.    Treatment of Classes of Claims and Equity Interests ........................................... 2
       4.1.   Class 1 – Lenders' Secured Claims ...................................................... 2
       4.2.   Class 2 – Priority Claims ...................................................................... 2
       4.3.   Class 3 – Unsecured Claims .................................................................. 2
       4.4.   Class 4 – Non-Debtor Subsidiary Claims .............................................. 3
       4.5.   Class 5 – Equity Interests ...................................................................... 3
       4.6.   Effect of Distributions .......................................................................... 3
V.     Acceptance or Rejection of Plan .......................................................................... 3
       5.1.   Impaired Classes Entitled to Vote ........................................................ 3
VI.    Means for Execution of the Plan .......................................................................... 3
       6.1.   Source of Funds .................................................................................... 3
       6.2.   Creation of Creditor Trust ..................................................................... 4
       6.3.   Creditor Trust Fees and Expenses ......................................................... 4
       6.4.   Authorized Issuance of Stock ............................................................... 4
       6.5.   Asset Sales ............................................................................................ 4
       6.6.   Corporate Action .................................................................................. 4
       6.7.   Causes of Action ................................................................................... 4
       6.8.   Cancellation of Notes, Instruments Debentures
              and Equity Interests .............................................................................. 5
       6.9.   Amendment and Restatement of
              Certificate of Incorporation ................................................................. 5
       6.10.  Amendment and Restatement of Bylaws .............................................. 5
       6.11.  Initial Board of Directors ...................................................................... 5
       6.12.  Termination of Creditors' Committee ................................................... 5
VII.   Provisions for Treatment of Disputed Claims Under the Plan ............................... 5
       7.1.   Objections to Claims ............................................................................. 5
       7.2.   Prosecution of Disputed Claims ........................................................... 5
       7.3.   Payments and Distributions on Disputed Claims ................................... 6
VIII.  Provisions Regarding Plan Distributions .............................................................. 6
       8.1.   Manner of Payment Under the Plan ...................................................... 6
       8.2.   Delivery of Distributions ....................................................................... 6
       8.3.   Failure to Claim Distributions ............................................................... 6
       8.4.   Withholding Taxes ................................................................................ 6
       8.5.   Time Bar to Cash Payments ................................................................... 6
       8.6.   Fractional Dollars; De Minimis Distributions ....................................... 7
       8.7.   Set-Offs ................................................................................................. 7
IX.    Subsequent Plan Distributions. ............................................................................ 7
       9.1.   Subsequently Allowed Claims ............................................................... 7

X.     Executory Contracts, Unexpired Leases and Other Agreements ................................ 7
       10.1    Assumption of Executory Contracts
               and Unexpired Leases ............................................................................... 7
       10.2    Rejection of Executory Contracts
               and Unexpired Leases ............................................................................... 7
       10.3    Rejection Damage Claims ........................................................................ 8
       10.4    Post-Petition Contracts and Leases ........................................................ 8
XI.    Conditions Precedent to Effective Date of the Plan .............................................. 8
       11.1.   Conditions Precedent to Effective Date of the Plan ............................. 8
XII.   Discharge and Releases ........................................................................................ 8
       12.1.   Scope of Discharge ................................................................................. 8
       12.2.   Release ..................................................................................................... 9
       12.3.   Exculpation .............................................................................................. 9
       12.4.   Injunction ................................................................................................. 9
       12.5.   Limitation on Releases and Injunctions ............................................... 10
       12.6.   Continuation of Indemnification Obligations ..................................... 10
XIII.  Miscellaneous ....................................................................................................... 10
       13.1    Prepayment ............................................................................................. 10
       13.2    Payment of Statutory Fees ..................................................................... 10
       13.3    Section 1146 Exception .......................................................................... 10
       13.4    Headings ................................................................................................. 10
       13.5    Severability ............................................................................................ 10
       13.6    Conflicts ................................................................................................. 10
       13.7    Governing Law ....................................................................................... 10
       13.8    Notices .................................................................................................... 11
       13.9    Successors and Assigns .......................................................................... 11
XIV.   Retention of Jurisdiction ...................................................................................... 11
       14.1.   Retention of Jurisdiction ........................................................................ 11
XV.    Modification, Revocation or Withdrawal of the Plan ......................................... 13
       15.1.   Modification of Plan ............................................................................... 13
       15.2.   Revocation or Withdrawal ..................................................................... 13

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| HOLIDAY RV SUPERSTORES, INC., | : Case No. 03-13221 (MFW) |
| | : |
| Debtor. | : |
| | : |

## SECOND AMENDED PLAN OF REORGANIZATION OF
## HOLIDAY RV SUPERSTORES, INC.

Holiday RV Superstores, Inc., debtor and debtor-in-possession, hereby proposes the following Plan of Reorganization pursuant to the provisions of chapter 11 of the Bankruptcy Code.

## ARTICLE I
## DEFINITIONS

1.1.    Terms Defined in the Plan of Reorganization. Capitalized terms used in the Plan shall have the respective meanings specified in Exhibit "A" to the Plan.

## ARTICLE II
## TREATMENT OF ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

2.1.    Treatment of Administrative Expenses. Allowed Administrative Expenses shall be paid by the Debtor or the Reorganized Debtor in full, in Cash on the later of the Effective Date and the date such Administrative Expense becomes an Allowed Administrative Expense.

2.2.    Treatment of Priority Tax Claims. Allowed Priority Tax Claims shall be paid by the Creditor Trust in full, in Cash on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim from the funds held by the Creditor Trust for such purpose.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The following is a designation of the Classes of Claims and Equity Interests under the Plan. This classification of Claims and Equity Interests is made for purposes of voting on the Plan and making distributions hereunder. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent any portion of the Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent it has not been paid, released or otherwise satisfied prior to the Effective Date.

1

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| Class 1 | Lenders' Secured Claims | Impaired | Entitled to Vote |
| Class 2 | Priority Claims | Unimpaired | Not Entitled to Vote<br>- Deemed to Accept |
| Class 3 | Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 | Non-Debtor Subsidiary Claims | Impaired | Not Entitled to Vote<br>- Deemed to Reject |
| Class 5 | Equity Interests | Impaired | Not Entitled to Vote<br>- Deemed to Reject |

## ARTICLE IV
## TREATMENT OF CLASSES OF CLAIMS AND EQUITY INTERESTS

4.1.     Class 1 – Lenders' Secured Claims.

a.     Class 1 consists of the Allowed Secured Claims of the Lenders arising prior to or after the Petition Date as set forth in and as allowed by the DIP Financing Stipulation and Order.

b.     The Lenders' Allowed Secured Claims shall be fully and completely satisfied by the following: (i) on the Effective Date, or as soon as reasonably practicable thereafter, the Debtor will distribute 100% of the shares of New Common Stock to FreedomRoads Minnesota, one of the Lenders, or its designee; and (ii) on the Effective Date, or as soon as reasonably practicable thereafter, the Debtor shall deliver the Amended Mortgage and Note to AGI, one the Lenders, or its designee.

4.2.     Class 2 – Priority Claims.

a.     Class 2 consists of Allowed Priority Claims.

b.     As soon as reasonably practicable after the Effective Date, Allowed Priority Claims shall be paid by the Creditor Trust in full in Cash from the funds held by the Creditor Trust for such purpose.

4.3.     Class 3 - Unsecured Claims.

a.     Class 3 consists of Allowed Unsecured Claims.

b.     As soon as reasonably practicable after the Effective Date, Allowed Unsecured Claims shall be paid a Pro Rata Cash distribution by the Creditor Trust from the funds held by the Creditor Trust for such purpose. Thereafter, as Disputed Unsecured Claims become Allowed Unsecured Claims, such claims shall be paid a Pro Rata Cash distribution by the Creditor Trust from the fund held by the Creditor Trust for such purpose.

4.4.    Class 4 – Non-Debtor Subsidiary Claims

a.    Class 4 consists of the Claims of the Non-Debtor Subsidiaries arising prior to the Petition Date.

b.    There shall be no distributions or payment of any kind to the holders of the Non-Debtor Subsidiary Claims.

4.5.    Class 5 – Equity Interests.

a.    Class 5 consists of Equity Interests in the Debtor.

b.    On the Effective Date, all Equity Interests in the Debtor, including but not limited to, an interest in any issued, unissued, authorized or outstanding preferred shares or common shares with any or no designation, options, warrants, any securities convertible into common shares or preferred shares, contractual rights to purchase or acquire such interests at any time and all other documents representing such Equity Interests shall be deemed canceled and of no force and effect. Without limiting the generality of the foregoing, all rights or Claims of any holders of Equity Interests with respect to dividends, distributions, voting rights, liquidation preferences or preemptive rights to subscribe for securities of the Debtor, or other rights or Claims with respect to such Equity Interests, whether arising under applicable law, the Debtor's certificate of incorporation, agreement or otherwise, also shall be deemed extinguished, canceled and of no force or effect on the Effective Date. There shall be no distribution or payment of any kind to holders of Equity Interests.

4.6.    Effect of Distributions. The treatment of, and consideration to be received on account of Claims and Equity Interests pursuant to the Plan shall be in full satisfaction, release and discharge of all Claims against or Equity Interests in the Debtor.

**ARTICLE V**
**ACCEPTANCE OR REJECTION OF PLAN**

5.1.    Impaired Classes Entitled To Vote. Holders of Allowed Claims in Classes 1 and 3 are impaired and entitled to vote separately to accept or reject the Plan. Holders of the Non-Debtor Subsidiary Claims in Class 4 and Equity Interests in Class 5 are not entitled to vote and are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. The tabulation rules provided in the Disclosure Statement Order shall govern voting on the Plan.

**ARTICLE VI**
**MEANS FOR EXECUTION OF THE PLAN**

6.1.    Source of Funds. On the Effective Date, the Lenders will contribute, in cash, to the Aggregate Funding Pool: $500,000 less (i) any amounts advanced to the Debtor pursuant to the DIP Financing Stipulation and Order; (ii) any Court approved payments for professional fees and expenses made from the Debtor's cash on hand and (iii) the Debtor's cash on hand as of the Effective Date (the "Lenders' Contribution"). The Lenders' Contribution and the Debtor's cash on hand as of the Effective Date shall comprise the Aggregate Funding Pool.

The funds remaining in the Aggregate Funding Pool after payment of all Allowed Administrative Expenses and cure amounts in accordance with sections 2.1 and 10.1 of this Plan shall be transferred to the Creditor Trust.

6.2.    Creation of Creditor Trust.    The Debtor and the Creditors' Committee shall establish the Creditor Trust as provided in the Creditor Trust Agreement, substantially in the form attached hereto as Exhibit "D", as a grantor trust pursuant to Treas. Reg. 1.6.714(a), effective as of the Effective Date. Distributions shall be made by the Creditor Trust from the Distribution Fund as set forth in this Plan and the Creditor Trust Agreement. The Creditor Trust will be responsible for objecting to Priority Tax Claims, Priority Claims, Secured Claims (except for the Lenders' Secured Claims) and Unsecured Claims pursuant to Article VII, investigating and pursuing causes of action pursuant to Section 6.7 (except for the Excluded Causes of Action) and making distributions to holders of Allowed Priority Tax Claims, Allowed Class 2 Claims and Allowed Class 3 Claims.

6.3.    Creditor Trust Fees and Expenses.    The Distribution Fund shall be used by the Creditor Trust to satisfy the fees and expenses incurred by the Creditor Trust in carrying out its duties under the Plan and the Creditor Trust Agreement, including, without limitation, pursuing any causes of action pursuant to Section 6.7 (except for the Excluded Causes of Action), undertaking objections to Claims pursuant to Article VII, making distributions pursuant to the Plan and the Creditor Trust Agreement and filing, if necessary, any and all tax information and returns required with respect to the Creditor Trust, and making tax elections by and on behalf of the Creditor Trust and paying taxes, if any, owed by the Creditor Trust.

6.4.    Authorized Issuance of Stock.    On the Effective Date, the Reorganized Debtor's authorized shares shall consist of 3,000 shares of common stock, $.01 par value.    On the Effective Date, the Reorganized Debtor is authorized to immediately issue approximately 500 shares of New Common Stock to FreedomRoads Minnesota, one of the Lenders, or its designee, which 500 shares shall constitute all issued stock of the Reorganized Debtor.

6.5.    Asset Sales.    Upon the Effective Date, the Reorganized Debtor shall be authorized but not directed to sell any of its real or personal property in the sole discretion of the Reorganized Debtor without further approval by the Court.

6.6.    Corporate Action.    Upon the entry of the Confirmation Order by the Court, all matters provided under the Plan involving the corporate structure of the Debtor shall be deemed authorized and approved without any requirement of further action by the Debtor, the Debtor's shareholders or the Debtor's board of directors.    The Debtor and the Reorganized Debtor are authorized but not required to liquidate and dissolve or terminate the existence of any wholly-owned subsidiaries or affiliated companies following the Effective Date.

6.7.    Causes of Action.    The Creditor Trust shall be the only party authorized to object to Priority Tax Claims, Priority Claims, Secured Claims (except for the Lenders' Secured Claim) and Unsecured Claims, and to pursue actions (except for the Excluded Causes of Action) to recover fraudulent conveyances, and other causes of action recoverable under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code. Any and all claims and causes of action in favor of the Debtor (except for the Excluded Causes of Action), pursuant to Bankruptcy Code sections

544, 545, 547, 548, 549 and 550, are hereby reserved and transferred to the Creditor Trust to be prosecuted after the Effective Date by the Creditor Trust. In addition to and notwithstanding anything contained herein, any and all claims and causes of action in favor of the Debtor that may be raised as a defense or offset to Priority Tax Claims, Priority Claims, Secured Claims (except for the Lenders' Secured Claim) and Unsecured Claims are hereby reserved and transferred to the Creditor Trust.

6.8.    Cancellation of Notes, Instruments, Debentures and Equity Interests. On the Effective Date, except to the extent otherwise provided in the Plan, all notes (excluding the Amended Mortgage and Note), instruments, debentures, certificates and other documents evidencing Claims and Equity Interests in the Debtor shall be canceled and deemed terminated.

6.9.    Amendment and Restatement of Certificate of Incorporation. The certificate of incorporation of the Reorganized Debtor shall be amended and restated on the Effective Date without further action of the board of directors or shareholders of the Reorganized Debtor, to read as set forth on Exhibit "E" attached hereto.

6.10.    Amendment and Restatement of Bylaws. On the Effective Date, the bylaws of the Reorganized Debtor shall be amended and restated without further action of the board of directors or shareholders of the Reorganized Debtor, to read as set forth on Exhibit "F" attached hereto.

6.11.    Initial Board of Directors. The Board of directors of the Reorganized Debtor shall be as follows:

| Name: | Position: |
| --- | --- |
| Paul Schedler | Chairman / Vice President of Finance |
| Anthony D. Borzillo | Director / Chief Executive Officer and Secretary |
| Larry J. Hughes | Director |

6.12.    Termination of Creditors' Committee. The appointment of the Creditors' Committee shall terminate on the Effective Date and the members of such Creditors' Committee shall be released and discharged from all further rights and duties arising from or related to the Chapter 11 Case. The professionals retained by the Creditors' Committee shall not be entitled to assert any Administrative Expenses nor shall they have an Allowed Administrative Expense for any services rendered or expenses incurred after the Effective Date.

## ARTICLE VII
## PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS UNDER THE PLAN

7.1.    Objections to Claims. After the Effective Date in accordance with section 6.7 of this Plan, the Creditor Trust may object to the allowance of Priority Tax Claims, Priority Claims, Secured Claims (except for the Lenders' Secured Claim) and Unsecured Claims filed with the Court with respect to which it disputes liability or allowance in whole or in part.

7.2.    Prosecution of Disputed Claims. There shall be no deadline to object to or investigate and review Priority Tax Claims, Priority Claims, Secured Claims (except for the

Lenders' Secured Claim) or Unsecured Claims, and any objections to Priority Tax Claims, Priority Claims, Secured Claims (except for the Lenders' Secured Claim) or Unsecured Claims and settlement thereof shall be dealt with as the Creditor Trust, in its sole discretion, deems to be appropriate. Further, the Creditor Trust shall have the sole and complete discretion to decide not to review and/or object to proofs of claim below a certain dollar amount because such review and/or objection would not be economically practical.

7.3. Payments and Distributions on Disputed Claims. No interest shall be paid on Disputed Claims that later become Allowed Claims. No distribution shall be made with respect to any Claim, a portion of which or all of which is a Disputed Claim pending the entire resolution thereof.

ARTICLE VIII
PROVISIONS REGARDING PLAN DISTRIBUTIONS

8.1. Manner of Payment under the Plan. Any payment in Cash to be made by the Debtor or the Creditor Trust shall be made, at the election of the Debtor or Creditor Trust, by check drawn on a domestic bank or by wire transfer from a domestic bank.

8.2. Delivery of Distributions. Subject to the provisions of Rule 2002(g) of the Bankruptcy Rules, and except as otherwise provided herein, distributions and deliveries to holders of Allowed Claims shall be made at the address of each holder as set forth in the Schedules filed by the Debtor, unless superseded by the address set forth on the proof(s) of claim filed by such holder, or at the last known address of such a holder if no proof of claim has been filed or if the Debtor, Reorganized Debtor or the Creditor Trust has been notified in writing of a change of address.

8.3. Failure to Claim Distributions. If a distribution is returned for insufficiency of address, the Creditor Trust shall make reasonable efforts to obtain corrected address information. Allowed Claims which are unclaimed for six (6) month shall, for purposes of Plan distributions, be deemed reconsidered and disallowed in full, subject to the subsequent right of such holder to request reconsideration by the Court. Upon such disallowance, distributions with respect to such disallowed Claims shall become the property of the Creditor Trust for use in its operations.

8.4. Withholding Taxes. If required under any applicable federal or state law, the Creditor Trust shall deduct any applicable federal or state withholding taxes from any distributions made pursuant to the Plan, and any such amounts deducted will be remitted to the appropriate Governmental Unit within the requisite time period prescribed by applicable law, rule or regulation. For tax purposes, distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest.

8.5. Time Bar to Cash Payments. Checks issued by the Debtor or the Creditor Trust on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof. After such date, all Claims relating to such voided checks shall be deemed reconsidered and disallowed in full, subject to the subsequent right of

such holder to request reconsideration by the Court. Upon such disallowance, distributions with respect to such disallowed Claims shall become the property of the Creditor Trust.

8.6.    Fractional Dollars; De Minimis Distributions.    Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down. The Creditor Trust will not make any payment of less than Twenty-Five Dollars ($25.00) on account of any Allowed Claim, unless a specific request therefore is made in writing to the Creditor Trust on or before ninety (90) days after the Effective Date.

8.7.    Set-Offs.    The Creditor Trust may, pursuant to section 553 of the Bankruptcy Code or other applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim), the claims, rights and causes of action of any nature that the Creditor Trust may hold against the holder of such Allowed Claim; provided, however, neither the failure to effect such a set-off nor the allowance of any Claim hereunder shall constitute a waiver or release by the Creditor Trust of any such claims, rights and causes of action the Debtor may possess against such holder.

**ARTICLE IX**
**SUBSEQUENT PLAN DISTRIBUTIONS**

9.1.    Subsequently Allowed Claims.    Subsequent to the Effective Date, when a Disputed Claim is resolved by settlement or Final Order, the Creditor Trust shall, as soon as practicable, pay to the holder of such Allowed Claim, Cash in an amount equal to the Cash distributions which would have previously been made to such holder by the Creditor Trust, if such Allowed Claim had been an Allowed Claim eligible for distribution on the Effective Date.

**ARTICLE X**
**EXECUTORY CONTRACTS, UNEXPIRED LEASES AND OTHER AGREEMENTS**

10.1.    Assumption of Executory Contracts and Unexpired Leases.    The prepetition executory contracts and unexpired leases set forth on Exhibit "B" shall be assumed by the Debtor upon the Confirmation Date. On the Confirmation Date the Debtor shall pay the cure amounts set forth on Exhibit "B", or if such amounts are disputed, the amount ultimately fixed by a Final Order or agreement of the parties. The entry of the Confirmation Order by the Court shall constitute approval of the cure amounts set forth on Exhibit "B" and the assumptions pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

10.2.    Rejection of Executory Contracts and Unexpired Leases.    Any prepetition executory contracts or unexpired leases which are not set forth on Exhibit "B", shall be deemed rejected by the Debtor on the Confirmation Date, and the entry of the Confirmation Order by the Court shall constitute approval of such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

10.3.   Rejection Damage Claims.  If the rejection of a prepetition executory contract or unexpired lease by the Debtor results in damages to the other party or parties to such contract or lease, then any claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable, unless a proof of claim is filed with Delaware Claims Agency, P.O. Box 515, Wilmington, Delaware, 19899, Attn: Holiday RV Claims Department or by delivering the original proof of claim by messenger or overnight courier to Delaware Claims Agency LLC, 103 West 7th Street, Wilmington, Delaware, 19801, Attn: Holiday RV Claims Department, and served upon counsel for the Creditor Trust on or before thirty (30) days after service of the Confirmation Order.  Such rejection claims remain subject to objection by the Creditor Trust.

10.4.   Post-Petition contracts and leases.  Contracts and leases which the Debtor has entered into in the normal course of its business, or  the Court has approved after the Petition Date (as may be modified by the Debtor and the non-debtor party to the contract or lease) shall be binding obligations of the Reorganized Debtor upon the Effective Date.  All contracts and leases which the Debtor has entered into after the Petition Date are identified in Exhibit "B-1" to the Plan.

### ARTICLE XI
### CONDITIONS PRECEDENT TO EFFECTIVE DATE OF THE PLAN

11.1.   Conditions Precedent to Effective Date of the Plan.   The occurrence of the Effective Date is subject to the satisfaction of the following conditions precedent:

        a.   The Confirmation Order shall be a Final Order;

        b.   The Debtor shall have executed the Amended Mortgage and Note;

        c.   The Lenders shall have funded the Lenders' Contribution;

        d.   The Debtor, the Creditor Trustee and the Creditors' Committee shall have executed the Creditor Trust Agreement; and

        e.   All other actions and documents necessary to implement the Plan shall have been effected or executed.

### ARTICLE XII
### DISCHARGE AND RELEASES

12.1.   Scope of Discharge.  On the Effective Date, the Debtor shall be discharged from (and the Debtor's assets shall be free and clear of) any Claim or Equity Interest that arose before the Confirmation Date, including any Claim of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:

        a.   a proof of claim based upon such Claim is filed or deemed filed under § 501 of the Bankruptcy Code;

        b.   such Claim is allowed under § 502 of the Bankruptcy Code; or

c.    the holder of such a Claim has accepted the Plan.

12.2.    **Release.**    On the Effective Date, the Debtor, for and on behalf of its estate, and the Reorganized Debtor, unconditionally, irrevocably, and forever, release: (a) the officers, directors, employees, attorneys, advisors and agents of the Debtor, (b) the Lenders, their affiliates and any of their respective members, officers, directors, employees, attorneys, advisors and agents, and (c) the Creditors' Committee, and any of its respective members in their capacity as such, their officers, directors, employees, attorneys, advisors and agents (collectively, the "Releasees"), from any and all claims, causes of action, suits, debts, obligations, demands, covenants, contracts, promises, agreements, liabilities, controversies, losses, costs, expenses, attorneys' fees, suits, actions, counterclaims and defenses, whatsoever, at law or in equity existing as of the Effective Date, whether known or unknown which the Debtor and the Reorganized Debtor now have or may have against the Releasees. The Creditor Trust shall be bound, to the same extent the Debtor and the Reorganized Debtor are bound by the foregoing release.

12.3.    **Exculpation.**    Neither (a) the Debtor, the Reorganized Debtor or any of their respective members, officers, directors, employees, attorneys, advisors and or agents, (b) the Lenders, their affiliates or any of their respective members, officers, directors, employees, attorneys, advisors and agents nor (c) the Creditors' Committee, nor any of its respective members in their capacity as such, their officers, directors, employees, attorneys, advisors and or agents shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence. Any of the foregoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities in connection with and under the Plan.

12.4.    **Injunction.**    Except as otherwise expressly provided in this Plan, any instruments executed in connection therewith, the Confirmation Order or a separate order of the Court, all Persons and Entities who have held, hold or may hold Claims against or Equity Interests in the Debtor, are permanently enjoined, on or after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest; (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor, the Reorganized Debtor, or the Creditor Trust on account of any such Claim or Equity Interest; (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtor, the Reorganized Debtor, or the Creditor Trust or against the property or interests in property of the Debtor, the Reorganized Debtor or the Creditor Trust on account of any such Claim or Equity Interest; and (iv) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtor, the Reorganized Debtor or the Creditor Trust or against the property or interests in property of the Debtor, the Reorganized Debtor, or the Creditor Trust on account of any such Claim or Equity Interest. Such injunction shall extend to successors of the Debtor, including, without limitation, the Reorganized Debtor and the Creditor Trust, and its property and interests in property.

12.5.     Limitation on Releases and Injunctions.  Notwithstanding the provisions of Sections 12.2 and 12.4, nothing in the Plan or any order confirming the Plan shall release, enjoin or impact in any way any non-derivative Claim held by a Person or Entity against a current or former officer, director or Lender of the Debtor or Reorganized Debtor, or any non-Debtor.

12.6.     Continuation of Indemnification Obligations.  For purposes of the plan, the obligations of the Debtor to defend, indemnify, reimburse or limit the liability of its present and former directors, officers or employees who were directors, officers or employees, respectively, on or after the Petition Date, solely in their capacity as directors, officers or employees, against any claims or obligations pursuant to the Debtor's certificate of incorporation or by-laws, applicable state law or specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged irrespective of whether indemnification, defense, reimbursement or limitation is owed in connection with an event occurring before, on or after the Petition Date.  The obligations described in the preceding sentence shall, on the Effective Date, become obligations of the Reorganized Debtor.

## ARTICLE XIII
## MISCELLANEOUS

13.1.     Prepayment. Notwithstanding anything otherwise contained in the Plan, the Debtor or the Creditor Trust may prepay any payment or installment under the Plan without premium or penalty.

13.2.     Payment of Statutory Fees.  All fees payable pursuant to 28 U.S.C. § 1930 shall be paid on and after the Effective Date to the extent required by applicable law.

13.3.     Section 1146 Exception.  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any Equity Interest, or the making or delivery of an instrument of transfer under the Plan, may not be taxed under any law imposing a stamp tax or similar tax.

13.4.     Headings. The headings used in the Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner shall affect the construction or interpretation of the provisions of this Plan.

13.5.     Severability. Should any provision in the Plan be determined to be unenforceable following the Effective Date, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

13.6.     Conflicts.  To the extent  any provision of the Disclosure Statement or the Confirmation Order (or any exhibits, schedules, appendices, supplements or amendments to the foregoing) or any other order referenced in the Plan, conflict with or are in any way inconsistent with the terms of the Plan, the Plan shall govern and control.

13.7.     Governing Law.  Except to the extent  the Bankruptcy Code or other federal law is applicable, or to the extent  an exhibit hereto provides otherwise, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in

accordance with, the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of Delaware without giving effect to principles of conflicts of laws.

13.8.    <u>Notices</u>.    All notices, requests, and demands to or upon the Debtor and Reorganized Debtor, to be effective, shall be in writing, including by facsimile transmission, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered to the following, or in the case of notice by facsimile transmission, when received by the following, addressed as follows or to such other addresses as are filed with the Court:

Holiday RV Superstores, Inc.
2500 Hollywood Boulevard
Suite 309
Hollywood, FL 33020
Attention: Anthony D. Borzillo, CEO
Telephone: (954) 342-8288
Facsimile: (954) 342-8287

13.9.    <u>Successors and Assigns</u>. The rights, duties and obligations of any person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such person.

### ARTICLE XIV
### RETENTION OF JURISDICTION

14.1.    <u>Retention of Jurisdiction</u>.    The Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Case, the Plan, the Creditor Trust or the Creditor Trust Agreement that relates to the following, in each case to the greatest extent permitted by applicable law:

a.    to resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to any amendment after the Effective Date of the Plan, to add any executory contracts or unexpired leases to the list of executory contracts or unexpired leases to be assumed;

b.    to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created with the Plan;

c.    to determine any and all motions, adversary proceedings, applications and contested or litigated matters pending on the Effective Date or, pursuant to the Plan, which may be instituted by the Creditor Trust after the Effective Date; provided however, that the Creditor

Trust shall reserve the right to commence collection actions, actions to recover receivables and other similar actions in all appropriate jurisdictions;

d.    to ensure distributions to holders of Allowed Claims are accomplished as provided herein;

e.    to hear and determine any timely objections to Administrative Expenses, Priority Tax Claims, Priority Claims, Secured Claims (except for the Lenders' Secured Claim), Unsecured Claims or to proofs of Claim filed, both before and after the Confirmation Date, including any objections to the classification of any Claim or Equity Interest, and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of or secured or unsecured status of any Claim, in whole or in part;

f.    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

g.    to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

h.    to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Court, including the Confirmation Order;

i.    to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

j.    to hear and determine disputes arising in connection with or relating to the Plan or the interpretation, implementation, or enforcement of the Plan or the extent of any Person or Entity's obligations incurred in connection with or released or exculpated under the Plan;

k.    to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation or enforcement of the Plan;

l.    to determine any other matters arising in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, the Creditor Trust Agreement or any contract, instrument, release or other agreement or document created in connection with the Plan or the Disclosure Statement, or to be executed in connection with the Plan;

m.    to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

n.    to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code; and

o.    to enter a final decree closing the Chapter 11 Case.

## ARTICLE XV
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

15.1.    Modification of Plan. Upon entry of the Confirmation Order, the Debtor may, upon order of the Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such holder.

15.2.    Revocation or Withdrawal.  If the Plan is revoked or withdrawn prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by the Debtor or any other Person or Entity or to prejudice in any matter the rights of the Debtor or any other Person or Entity in any further proceedings involving the Debtor.

Dated: July 12, 2004

HOLIDAY RV SUPERSTORES, INC.
DEBTOR AND DEBTOR IN POSSESSION

By: _____
Name: Anthony D. Borzillo
Title: Chief Executive Officer and Chief Financial Officer

13

118790.01600/40140299v5

## SUMMARY OF EXHIBITS

Exhibit A        Definitions
Exhibit B        Assumed Contracts and Leases
Exhibit B-1      List of Executory Contracts and Leases Entered Into After the Petition Date
Exhibit C        Amended Mortgage and Note
Exhibit D        Creditor Trust Agreement
Exhibit E        Amendment and Restatement of Certificate of Incorporation
Exhibit F        Amendment and Restatement of Bylaws

## EXHIBIT A

## DEFINITIONS

"Administrative Expense" shall mean any cost or expense of administration of the Chapter 11 Case under sections 503(b) and or 507(a)(1) of the Bankruptcy Code, including, without limitation, professional fees and expenses and any fees or charges assessed against the Debtor's estate pursuant to 28 U.S.C. § 1930.

"Aggregate Funding Pool" shall have the meaning set forth in Section 6.1 of this Plan.

"Allowed Administrative Expense" shall mean any Administrative Expense allowed by Final Order or, in the case of Administrative Expenses incurred in the ordinary course of business, agreed to by the Debtor.

"Allowed Claim" shall mean any Claim, proof of which was filed on or before the date designated by the Court as the last date for filing proofs of claim, or which has been scheduled by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been filed, or which has been determined by a Final Order.

"Allowed Priority Claim" shall mean a Priority Claim, to the extent it is or has become an Allowed Claim.

"Allowed Unsecured Claim" shall mean an Unsecured Claim, to the extent it is or has become an Allowed Claim.

"Amended Mortgage and Note" shall mean the mortgage and note substantially in the forms attached hereto as Exhibit "C".

"Ballot" shall mean the form distributed to each Holder of an Impaired Claim on which is to be indicated acceptance or rejection of the Plan.

"Bankruptcy Code" shall mean Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as in effect on the date hereof or hereafter amended if such amendments are made applicable to the Chapter 11 Case.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. § 2075, together with local rules adopted and in effect from time to time in the Court.

"Bar Date" shall mean April 23 2004 at 4:00 p.m., which is the date set by the Court as the last date for timely submission of a proof of claim on account of any Claim.

1

118790.01600/40140299v5

"Business Day" shall mean a day other than a Saturday, Sunday or other day on which commercial banks in Delaware are authorized or required by law to close.

"Cash" shall mean legal tender of the United States of America and equivalents thereof.

"Chapter 11 Case" shall mean the case commenced under Chapter 11 of the Bankruptcy Code by the Debtor on the Petition Date, styled Holiday RV Superstores, Inc., Case No. 03-13221 (MFW), currently pending before the Court.

"Claim" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

"Class" shall mean any group of holders of Claims or Equity Interests as specified in Article III of the Plan.

"Collateral" shall mean any property or interest in property of the estate of the Debtor that is subject to an unavoidable Lien to secure the payment or performance of a Claim.

"Confirmation Date" shall mean the date on which the Court enters the Confirmation Order.

"Confirmation Hearing" shall mean the hearing to consider confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code, as the same may be adjourned from time to time.

"Confirmation Order" shall mean the order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

"Court" shall mean the United States Bankruptcy Court in and for the District of Delaware with authority over the Debtor's Chapter 11 case.

"Creditor" shall mean any Entity or Person that has a Claim against the Debtor.

"Creditors' Committee" shall mean the official unsecured creditors' committee appointed in the Chapter 11 Case by the Office of the United States Trustee for the District of Delaware, as its composition may be changed from time to time by the addition, resignation and/or removal of its members.

"Creditor Trust" shall mean the trust established pursuant to the Plan and in accordance with the Creditor Trust Agreement.

"Creditor Trust Agreement" shall mean that certain trust agreement which will establish and govern the Creditor Trust.

"Creditor Trustee" shall mean the trustee of the Creditor Trust.

"Debtor" shall mean Holiday RV Superstores, Inc.

2

"Debtor in Possession" shall mean the Debtor as debtor-in-possession pursuant to sections 1107(a) and 1108(a) of the Bankruptcy Code.

"DIP Financing Stipulation and Order" shall mean the Stipulation and Final order (A) Authorizing the Debtor-In-Possession to Obtain Post-Petition Financing and to Use Cash Collateral Pursuant to sections 363 and 364 of the Bankruptcy Code, (B) Granting Liens, Security Interests and Super Priority Claims dated November 17, 2003.

"Disclosure Statement" shall mean the Disclosure Statement for the Plan dated July 12, 2004, as amended, supplemented, or modified from time to time, describing the Plan.

"Disclosure Statement Order" shall mean the order entered by the Court approving the Disclosure Statement in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

"Disputed Claim" shall mean any Claim against the Debtor, to the extent the allowance of which is the subject of a timely objection, request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Confirmation Order or is listed in the Schedules as unliquidated, contingent or disputed, or is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn, settled, or determined by a Final Order.

"Distribution Fund" shall mean (i) the funds transferred to the Creditor Trust pursuant to Scetion 6.1 and (ii) any recoveries from causes of actions initiated by the Creditor Trust pursuant to Section 6.7.

"Effective Date" shall mean the first Business Day after the date on which the conditions in Section 11.1 of the Plan have been satisfied or waived in accordance with that Section.

"Entity" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

"Equity Interest" any ownership interest in the Debtor, including but not limited to, an interest in any issued, unissued, authorized or outstanding preferred shares or common shares with any or no designation, options, warrants, any securities convertible into common shares or preferred shares, contractual rights to purchase or acquire such interests at any time and all rights arising with respect thereto.

"Excluded Causes of Action" shall mean any and all claims, causes of action, suits, debts, obligations, demands, covenants, contracts, promises, agreements, liabilities, controversies, losses, costs, expenses, attorneys' fees, suits, actions, counterclaims and defenses, whatsoever, at law or in equity existing as of the Effective Date, whether known or unknown which the Debtor or the Reorganized Debtor now have or may have against the Debtor, the Reorganized Debtor or the Lenders, their affiliates or any of their respective members, officers, directors, employees, attorneys, advisors , agents, successors or assigns.

"Final Order" shall mean an order, ruling or judgment which is no longer subject to review, reversal, modification or amendment by appeal or writ of certiorari.

3

"Governmental Unit" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

"Impaired" shall mean, with respect to any Claim, Equity Interest or Class, the condition or effects described in section 1124 of the Bankruptcy Code.

"Lenders" shall mean FreedomRoads Finance Company, LLC, a Minnesota limited liability company (formerly known as Holiday Finance Company, LLC, a Minnesota limited liability company) as agent for itself ("FreedomRoads Minnesota"), AGI Holding Corp. ("AGHIC"), The Stephen Adams Living Trust (the "Trust") and AGHI Finance Co. LLC, (now known as Holiday Finance Company, LLC, a Delaware limited liability company)("Holiday Finance Delaware") and AGI RV Properties Company, LLC ("AGI").

"Lenders' Contribution" shall have the meaning set forth in Section 6.1 of this Plan.

"Lenders' Secured Claims" shall mean the Secured Claims of the Lenders arising prior to or after the Petition Date as set forth in and allowed by the DIP Financing Stipulation and Order.

"Lien" shall mean any charge against or interest in property to secure payment of a debt or performance of an obligation.

"New Common Stock" shall mean the shares of common stock of the Reorganized Debtor distributed pursuant to the Plan.

"Non-Debtor Subsidiaries" shall mean Holiday RV Superstores of South Carolina, Inc., Holiday RV Superstores of New Mexico, Inc. and Holiday RV Superstores West, Inc.

"Non-Debtor Subsidiary Claims" shall mean the Claims of the Non-Debtor Subsidiaries against the Debtor.

"Person" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

"Petition Date" shall mean October 20, 2003, the date the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

"Plan" shall mean this Second Amended Plan of Reorganization, as modified or amended, and the exhibits attached thereto, either in their present form or as altered, amended or modified from time to time.

"Priority Claim" shall mean any Claim against the Debtor, other than an Administrative Expense entitled to priority in payment under section 507(a) of the Bankruptcy Code, other than claims under sections 507(a)(1) and 507(a)(8), but only to the extent entitled to such priority.

4

"Priority Tax Claim" shall mean any Claim against the Debtor entitled to priority payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent entitled to such priority.

"Pro Rata" shall mean with respect to an amount of Cash, to be distributed to the holder of an Allowed Claim of a particular Class on a particular date, the same proportion that such Allowed Claim bears to the aggregate of all Allowed Claims of that particular Class on that particular date.

"Reorganized Debtor" shall mean the Debtor or any successor thereto by merger, consolidation or otherwise, on and after the Effective Date.

"Schedules" shall mean the schedules of assets and liabilities, and the statement of financial affairs filed by the Debtor in accordance with section 521 of the Bankruptcy Code as such schedules and statement have been or may be supplemented or amended.

"Secured Claim" shall mean a Claim against the Debtor that is secured by a Lien on Collateral or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Collateral or to the extent of the amount subject to setoff as applicable, as determined in accordance with section 506(a) of the Bankruptcy Code.

"Seller Notes" shall mean the two (2) notes held by the Debtor arising from the sale of the Lexington, KY and Prosperity, WV dealerships.

"Unsecured Claim" shall mean any Claim against the Debtor other than an Administrative Expense, a Priority Tax Claim, a Priority Claim, a Secured Claim, and an Equity Security Interest.

"Voting Deadline" shall mean the date set by the Court as the last date for timely submission by a Creditor of a ballot accepting or rejecting the Plan.

118790.01600/40140299v5

*     *     *

**Remaining Exhibits Omitted**

**UNITED STATES DEPARTMENT OF JUSTICE**
**OFFICE OF THE UNITED STATES TRUSTEE**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN THE MATTER OF: | : | Chapter 11 |
| | : | |
| Holiday RV Superstores, Inc., | : | Case No. 03-13221 (MFW) |
| | : | |
| | : | NOTICE OF APPOINTMENT OF |
| Debtor. | : | COMMITTEE OF UNSECURED |
| ------------------------------- | : | CREDITORS |

Pursuant to Section 1102(a)(1) of the Bankruptcy Code, I hereby appoint the following persons to the Committee of Unsecured Creditors in connection with the above captioned case:

1.  Doerge Capital Collateralized Bridge Fund, L.P., Attn: Christopher J. Horvay, Esq., 30 South Wacker Drive, Suite 2112, Chicago, IL 60606, Phone: (312) 906-9600, Fax: (312) 906-8563;

2.  Coast Distribution System, Attn: Moira M. Knight, P.O. Box 1449, Morgan Hill. CA 95038, Phone: (866) 293-2064, Ext. 152, Fax: (303) 375-0527;

3.  Century Partnership, Ltd., Attn: Thomas H. Fell, Esq., 3960 Howard Hughes Parkway, 9th Floor, Las Vegas, NV 89109, Phone: (702) 796-5555, Fax: (702) 369-2666; and

4.  FTI Consulting, Inc., Attn: Theordore Pincus, 2021 Research Drive, Annapolis, MO 21401, Phone: (410) 224-1476, Fax: (410) 224-2809.

ROBERTA A. DeANGELIS
ACTING UNITED STATES TRUSTEE

/s/ Margaret L. Harrison for _____
FRANK J. PERCH, III
ASSISTANT UNITED STATES TRUSTEE

DATED: October 29, 2003

Attorney assigned to this Case: Margaret L. Harrison, Esquire, Phone: (302) 573-6491, Fax: (302) 573-6497
Debtors' Counsel: Mark J. Packel, Esquire, Phone: (302) 425-6400, Fax: (302) 425-6464

**EXHIBIT 3**