IN THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

| | |
|---|---|
| DOERGE CAPITAL COLLATERALIZED BRIDGE FUND L.P., an Illinois Limited Partnership, ARMANDO ALONSO, an Individual, FRANCISCO ALONSO, an Individual, ERNEST DAVIS, JR, an Individual, and THOMAS HALL, an Individual ) ) ) ) ) ) | |
| Plaintiffs, ) ) | No. 04L0873 |
| v. ) ) | |
| MARCUS LEMONIS, an Individual, and FREEDOM ROADS, LLC, a limited liability company ) ) ) | OCT 27 2004 |
| Defendants. ) | |

**COMPLAINT AT LAW**

Plaintiffs, Doerge Capital Collateralized Bridge Fund L.P., Armando Alonso, Francisco Alonso, Ernest Davis, Jr., and Thomas Hall, by their attorneys, Gould & Ratner, complaining of the Defendants Marcus Lemonis and Freedom Roads LLC, state and allege as follows:

**Summary of Claims**

1.      This action relates to an insolvent and now bankrupt corporation known as Holiday RV Superstores, Inc.  The plaintiffs, who are comprised of former investors and/or creditors of Holiday RV Superstores, Inc., bring this action against the Defendant Marcus Lemonis, who was the Chief Executive Officer and Chairman of the Board of Directors of Holiday RV Superstores, Inc. and against Freedom Roads, LLC as successor to Holiday RV Superstores, Inc.  This action arises from an intentional fraud, breach of fiduciary duty and conspiracy, wherein Marcus Lemonis conspired with Stephen Adams, an individual who owned a controlling interest in Holiday RV Superstores, Inc. The

fraudulent conspiracy had as its object and purpose to siphon valuable assets and money from Holiday RV Superstores, Inc., and which ultimately lead to the insolvency and bankruptcy of Holiday RV Superstores, Inc. Those valuable assets included millions of dollars worth of recreational vehicle dealerships and rolling stock inventory, and were transferred to a new privately held business entity, Holiday Holdings, LLC (now known as "Freedom Roads LLC"), an entity owned and/or controlled by Stephen Adams. Marcus Lemonis has personally benefited from his breaches of fiduciary duty and fraudulent conspiracy in that he has served and continues to serve as Chief Executive Officer of the privately held Freedom Roads LLC and has received substantial financial remuneration as a result of the wrongful acts alleged herein. The plaintiffs, who lost substantially all their investments in Holiday RV Superstores, Inc. as a result of the misconduct alleged herein, have been damaged in the aggregate in an amount in excess of $5,000,000. In this Complaint at Law, the plaintiffs seek recovery of compensatory damages in an amount in excess of $5,000,000 and punitive damages in an amount in excess of $10,000,000.

### Parties

2.  Plaintiff Doerge Capital Collateralized Bridge Fund (hereinafter "Doerge Fund") is a Delaware Limited Partnership, with its principal place of business in Chicago, Illinois. Doerge Fund acted, at all relevant times, by its agents, including David Doerge (hereinafter "Doerge").

3.  Plaintiff Aramando Alonso is an individual who resides in Ocala, Florida.

4.  Plaintiff Francisco Alonso is an individual who resides in Ocala, Florida.

2

5. Plaintiff Ernest Davis, Jr. is an individual who resides in Beaver, West Virginia.

6. Plaintiff Thomas Hall is an individual who resides in Lexington, Kentucky.

7. Defendant Marcus Lemonis (hereinafter "Lemonis") is an individual who resides in Lake County, Illinois.

8. Holiday RV Superstores, Inc. was a Delaware corporation, presently in bankruptcy pursuant to Chapter 11 of the United States Bankruptcy Code, in the Bankruptcy Court for the District of Delaware. Holiday RV Superstores, Inc. (hereinafter at times referred to as "Holiday RV") is not named as a defendant in this action, and no relief is sought against Holiday RV in this proceeding. At times relevant to this action, Holiday RV maintained its principal place of business in Lincolnshire, Illinois.

9. Stephen Adams, is an individual who is not named as a defendant in this cause and no relief is sought against Stephen Adams individually. As hereinafter described, Stephen Adams conspired with the defendant Lemonis to gain control of Holiday RV's assets at the expense of and causing damage to the other investors and creditors of Holiday RV, including the plaintiffs. (Stephen Adams is at times hereinafter referred to as "Adams").

10. Defendant Freedom Roads LLC is a Delaware Limited Liability Company, and was formerly known as Holiday Holdings, LLC, which was also a Delaware Limited Liability Company. On information and belief, defendant Freedom Roads LLC today owns and operates all or substantially all of the assets formerly owned and operated by Holiday RV.

3

## Allegations Common to All Counts

11. Prior to November 1999 and continuing until its bankruptcy filing in October 2003, Holiday RV was a corporation engaged in the business of owning and operating recreational vehicle dealerships at various locations throughout the United States.

12. Holiday RV acquired recreational vehicle dealerships from a number of privately held or family businesses, including businesses owned by Armando Alonso, Francisco Alonso, Ernest Davis, Jr. and Thomas Hall, who are plaintiffs in this action.

13. Under its so-called "roll-up strategy", Holiday RV's business plan encompassed a centralized management function and economies of scale to permit the operation of the individual dealerships on a more profitable basis, and thus, at least according to the publicly stated business plan, would result in greater shareholder value.

14. Holiday RV's acquisition of individual recreational vehicle dealerships at times took the form of a purchase of stock or dealership assets in exchange for cash, plus a convertible promissory note, which note could at the option of the holder be converted to Holiday RV common stock.

15. On or about March 13, 2001, Lemonis commenced employment with Holiday RV as its president.

16. At the time Lemonis joined Holiday RV, Stephen Adams had a substantial ownership interest in the common stock of Holiday RV.

17. Through a number of business affiliates, Stephen Adams also owned and/or controlled a group of related entities, including Camping World (RV lifestyle equipment and supplies) , AGHI (finance and insurance), Good Sam Club (RV lifestyle club management), and a trade publication in the recreational vehicle trade, known as "RV

Business". RV Business was a publication widely circulated and read by members and investors of the recreational vehicle industry, including the plaintiffs herein.

18. With Lemonis' knowledge and participation, Adams and Lemonis caused RV Business to publish misleadingly favorable portrayals of Holiday RV and its business prospects.

19. In March 2001, RV Business quoted Mike Riley, then Chief Executive Officer of Holiday RV, stating that Holiday RV enjoyed $152,000,000 in sales for fiscal year 2000, and expected to grow to $1 billion in the annual revenue by October 31, 2002.

20. Lemonis stated publicly via RV Business in March of 2001 that Holiday RV was enacting a plan to grant warrants to existing shareholders and to build "a national brand through acquisitions".

21. Lemonis made numerous other public statements designed to promote the view that Holiday RV's financial prospects were strong.

22. Lemonis made these and other statements intended to portray Holiday RV as being in sound financial health and with favorable financial prospects for the future. He made these and other statements in part for the purpose of inducing holders of convertible notes, which included plaintiffs Ernest Davis, Jr. and Armando Alonso and Francisco Alonso to convert their notes to common stock in Holiday RV.

23. On or about July 6, 2001, Lemonis was promoted to Chief Executive Officer by Holiday RV.

24. Continuing his ascension at Holiday RV, Lemonis was named Chairman of the Board of Directors on October 25, 2001.

25. Through late in calendar year 2001, Holiday RV continued its expansion by acquiring existing dealerships and by opening new dealerships. Holiday RV initially financed its operations and expansion by means of a line of credit with Bank of America in amounts ranging from $25,000,000 to a high of $55,000,000.

26. By December 7, 2001 Holiday RV operated two dealerships in California and one each in Lexington, KY, Las Cruses, NM, Spartanburg, SC, in Virginia and Prosperity, WV.

27. After 2001, Stephen Adams began acquiring a controlling stake in Holiday RV. By January 2002, Adams controlled 45.2% of Holiday RV's outstanding common stock. By virtue of his shareholder interest and consequent voting power, Adams enjoyed an expanding influence and eventual domination over the Board of Directors of Holiday RV.

28. Notwithstanding Adams' influence over the Board of Directors, and his *de facto* control over the management and direction of the company, Lemonis falsely stated on numerous occasions both publicly and privately that Adams did not have a significant role in the management and direction of Holiday RV.

29. On March 30, 2002, a company controlled by Adams, known as Holiday Finance, LLC entered into a loan and security agreement with Holiday RV, pursuant to which Holiday Finance loaned $1.6 million for a one year term at 20% per annum interest, payable monthly. The loan carried substantial fees in addition to the 20% annual rate of interest, and the arrangement also granted to Adams or his affiliate company a right of first refusal on the Las Cruces and Spartanburg dealerships which were owned by Holiday RV.

30. Lemonis and Adams formulated a secret plan and agreement to use Holiday RV's deteriorating financial position and alarming credit situation as a means for Adams to obtain control of the company and its assets. Pursuant to this arrangement, Lemonis agreed to advocate and support transactions designed to transfer control and ownership of Holiday RV assets to a new entity owned and/or controlled by Adams. For his part, Adams agreed to reward Lemonis with an executive position in his new privately held entity, Holiday Holdings LLC, now known as Freedom Roads LLC.

31. Unable to make interest payments under the financing arrangement with Holiday Finance LLC, Holiday RV's financial condition continued to deteriorate. By July 2002, Holiday RV defaulted on payment of interest to Adams' affiliate and was forced to sell to another Adams' affiliate the Las Cruces, New Mexico dealership at a substantially below market price.

32. Also in July of 2002, Holiday RV reported in a filing with the Securities and Exchange Commission that its viability as a going concern was in jeopardy.

33. During the period of Holiday RV's financial decline, between approximately November 2001 and November 2002, Lemonis, acting as Chief Executive Officer and Chairman of the Board of Directors, spent outlandish sums of company funds for so-called business travel and entertainment. Lemonis submitted reports for reimbursement of business expenses which were not based on legitimate business expenses, and which expenses often were without any business purpose whatsoever, in violation of Holiday RV's expense reimbursement policies.

34. Using Holiday RV funds, Lemonis acquired a 2003 Range Rover for his personal use, and used Holiday RV funds for payment of gasoline and insurance for his Range Rover for his personal use.

35. Lemonis incurred unreasonable and excessive expenses which he submitted to the company for reimbursement, and which were in fact reimbursed by Holiday RV without proper justification.

36. As part of a so-called "capital restructuring" Adams continued to loan money to Holiday RV on terms which permitted the loans to be converted to common stock of Holiday RV. Notwithstanding that Lemonis and Adams planned for Adams to control a substantial majority of Holiday RV's shares, Lemonis helped to conceal his secret plan with Adams by publicly stating that Adams was not to be involved in day to day management of the company, and expressly denied any plans to "take the company private".

37. Adams continued to loan money to Holiday RV through the third and fourth calendar quarters of 2002 and, by January 2003, Holiday RV owed companies owned and/or controlled by Steve Adams debts totaling approximately $12.3 million.

38. Notwithstanding his actual knowledge to the contrary, Lemonis continued to state publicly and privately in late 2002 that Adams was not and would not be involved in the management of Holiday RV.

39. In or about October 2002, Lemonis met with the Holiday RV Board of Directors to obtain approval of his fiscal year 2002 compensation package. Lemonis requested a bonus payment of $40,000, which request was tentatively rejected by the Board, expressly to permit further review with Adams. Thereafter, in or about

November 2002, without Board approval, Lemonis instructed Holiday RV accounting personnel to wire a sum in excess of $40,000 to his personal account.

40. On information and belief, Adams authorized Lemonis to pay himself the $40,000.00 bonus in November 2002, in part to compensate Lemonis for his role in implementing and helping to conceal the plan to take the company private.

41. By the end of 2002, Adams (either directly or through his affiliates) had loaned sufficient funds to Holiday RV to retire the Bank of America "floor plan" loan, thus securing for Adams' financial control over Holiday RV's entire inventory of recreational vehicles and other rolling stock.

42. Near the end of calendar year 2002, the Board of Directors of Holiday RV commenced an investigation of Lemonis' expense account and compensation abuses.  By April of 2003, Holiday RV filed suit against Lemonis to recover over $112,000 from Lemonis.

43. On or about January 31, 2003, having been informed by the Board of Directors at Holiday RV that his expense account and compensation abuses were under investigation, Lemonis resigned his positions with the company.

44. Thereafter, although stating publicly he had resigned from Holiday RV, and though he held no official capacity with the company, Lemonis continued to utilize its office space in Lincolnshire, Illinois, including computer and e-mail.

45. After his "official resignation", Lemonis continued to regularly confer with Adams and/or Adams' representative concerning Holiday RV's financial condition and business issues.

46. During the early months of 2003, Lemonis continued to work on behalf of Adams in furtherance of their scheme to transfer Holiday RV assets to Holiday Holdings LLC, now known as Freedom Roads LLC.

47. Notwithstanding that he had no official position with Holiday RV, Lemonis negotiated concerning potential disposition and sale of Holiday RV assets.

48. In April of 2003, Lemonis continued to communicate with senior Holiday RV management on Holiday RV's business. Specifically, Lemonis continued to utilize Holiday RV resources and to work cooperatively with his successor, Holiday RV CEO Casey Gunnell, toward the sale of Holiday RV's Lexington, KY and Prosperity, WV dealerships.

49. On April 28, 2003, Lemonis executed a term sheet, purportedly as representative of Holiday Holdings, LLC as seller, in a transaction for the sale of the Lexington, Kentucky and Prosperity, West Virginia dealerships, notwithstanding that the dealerships were owned by Holiday RV, company from whom he had "resigned" three months earlier.

50. As Lemonis was working in conspiracy with Adams to "take the company private" by transferring assets to Holiday Holdings LLC, Adams was increasing his ownership and control of Holiday RV. With Lemonis' help, Adams continued to exercise dominion and control over Holiday RV's assets. In March of 2003, Holiday RV sold the assets of its Spartanburg, SC dealership to a company known as Holiday Kamper. The proceeds of the sale were distributed to Adams and/or his affiliate.

51. Thereafter, within 30-60 days, Adams publicly announced his intent to acquire Holiday Kamper.

52. On information and belief, the Holiday Kamper assets were folded into Adams' privately held Holiday Holdings, LLC, now known as Freedom Roads LLC, the company which is now run by Lemonis.

53. Through a series of transactions, Adams converted debt instruments to common stock in Holiday RV, and by March 2003, Adams owned more than 90% of Holiday RV's outstanding common stock.

54. By June 2003, Adams caused removal of Holiday RV directors Lee Sanders, Bill Toy and Dave Kamm, replacing them with his designees to the Board of Directors, Anthony Borzillo, Paul Schedler and Larry Hughes.

55. As one of their first official acts, Adams' designated directors caused the pending Holiday RV lawsuit against Lemonis to be settled for a relatively nominal sum, representing just cents on the dollar relative to the amounts Lemonis had taken from the company in expense and compensation abuses.

56. Adams rewarded Lemonis for his complicity and effort in the fraudulent scheme described herein, naming him CEO of Holiday Holdings LLC, now known as Freedom Roads LLC.

57. As Holiday RV continued to financially deteriorate, months before the Holiday RV bankruptcy filing, Lemonis and Adams conspired together on a plan for Adams to acquire the remaining assets of Holiday RV out of bankruptcy, and to move those assets to Adams' privately held company Holiday Holdings LLC, now known as Freedom Roads, LLC.

11

58. On October 20, 2003, the Adams designated Board of Directors caused Holiday RV to file for bankruptcy protection in the bankruptcy court for the District of Delaware.

59. Adams negotiated an arrangement with the committee of unsecured creditors of Holiday RV Superstores, Inc. a plan which, on information and belief, will permit the use of approximately $20 million of net operating losses, for tax purposes, in his privately held company, Holiday Holdings, LLC, now known as Freedom Roadss LLC.

60. As a result, the investors and creditors of Holiday RV, including the plaintiffs herein, lost millions of dollars in their investment in Holiday RV, and may be paid just five cents on the dollar on their claims against the bankruptcy company.

61. The new entity, Holiday Holdings, LLC, now known as Freedom Roads LLC, is operated by Lemonis at or near the same location as formerly occupied by Holiday RV, in the same line of business, utilizing the same vendors and serving the same market, utilizing in significant part, the assets which had previously been assets of Holiday RV.

62. Freedom Roads LLC today operates the dealerships located in Spartanburg, SC, and Claremont, CA, and on information and belief, all or substantially all the assets which had been owned and operated by Holiday RV.

### COUNT I

(Doerge Fund v. Lemonis – Fraud)

63. The Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 62 as paragraph 63 of Count I, as though fully set forth herein.

64. In or about December 2001, the Plaintiff Doerge Fund entered into negotiations for an investment in Holiday RV.

65. On or about January 8, 2002, Doerge Fund and Holiday RV reached agreement on summary terms detailing the initial parameters and terms of their agreement, in advance of their signing definitive legal documents, whereby Doerge Fund would make two initial payments in equal installments of $250,000 each.

66. During Doerge's negotiations with Holiday RV, from December 2001 through February 2002, Doerge had numerous conversations with Lemonis, who as Chairman and CEO, was negotiating on behalf of Holiday RV.

67. During those conversations, Doerge asked Lemonis about the extent of Adams' involvement with Holiday RV and specifically asked Lemonis whether Adams would be participating in the management and direction of the company. Doerge informed Lemonis that he would not invest in Holiday RV if Stephen Adams was to have a managerial role or a controlling interest in the company.

68. In response, Lemonis assured Doerge that Adams did not have a significant role in the management and direction of Holiday RV and that he would not have such role in the future.

69. Lemonis concealed from Doerge Fund (and other investors and creditors of Holiday RV) the plan and scheme between himself and Adams as hereinabove described, and misrepresented the true facts in his statements to Doerge, knowing his statements to be false.

70. Lemonis misrepresented these facts to Doerge intending to induce Doerge's reliance, and investment in Holiday RV.

13

71. Doerge believed Lemonis' statements to be true, and in reliance upon Lemonis' statements, and his silence concerning the scheme with Adams, and as a result Doerge Fund transferred $500,000 to Holiday RV and/or as directed by Holiday RV in accordance with the terms of their summary terms agreement, and notwithstanding that the parties had not yet executed definitive documentation.

72. Holiday RV, acting through Lemonis, accepted Doerge Fund's payments, thereby accepting and ratifying the terms of the summary terms.

73. After Doerge Fund made the second $250,000 payment, in or about February 2002, Holiday RV acting at Lemonis' direction, refused to agree to definitive documents consistent with the terms of the termsheet.

74. Doerge Fund demanded return of the funds he had advanced, which demand was refused by Holiday RV.

75. Holiday RV acknowledged owing Doerge Fund the sum of $500,000, but no portion of it was repaid before the Holiday RV bankruptcy filing.

76. As a direct and proximate result of Lemonis' fraud and scheme to defraud as alleged herein, Doerge Fund's investment was lost, to its loss and damage in an amount in excess of $500,000, plus interest, costs and attorney's fees.

77. Doerge Fund incurred damages as alleged herein in its individual capacity, distinct from Holiday RV's other shareholders, and separate and apart from the decline and value of their shares which also resulted from the defendant's misconduct.

78. In perpetrating his fraudulent scheme, Lemonis acted with outrageous disregard for the rights and interests of the creditors and investors of Holiday RV, particularly the plaintiffs herein, for his own personal financial gain.

WHEREFORE, the Plaintiff, Doerge Capital Collateralized Bridge Fund prays for judgment in its favor and against the Defendant Marcus Lemonis in an amount commensurate with the proofs, in excess of $500,000 as compensatory damages, plus punitive damages in an amount in excess of $1,000,000, to punish Marcus Lemonis and deter others similarly situated from engaging in such outrageous misconduct, plus costs of suit.

## COUNT II

(Doerge Fund v. Lemonis – Breach of Fiduciary Duty)

79. The Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 62, as paragraph 79 of Count II as though fully set forth herein.

80. As Holiday RV reached insolvency, which was occurring no later than July 2002 when Holiday RV's quarterly report to the Securities & Exchange Commission expressed concern about its viability as a going concern, Lemonis as Chief Executive Officer and Chairman of the Board of Directors owed a fiduciary duty to the creditors of Holiday RV in addition to all of its shareholders, to act with the utmost fidelity, loyalty and good faith.

81. Notwithstanding his fiduciary duties, and in breach of his fiduciary obligations, Lemonis committed one or more of the following wrongful acts:

   a.  failed to disclose his plan to "take the company private";

   b.  worked on a secret plan to transfer Holiday RV's assets to Steve Adams' company, Holiday Holdings, LLC;

   c.  negotiated for the sale of Holiday RV's assets, even after his position as CEO and Chairman of the Board with Holiday RV had terminated;

d.  Failed to disclose Adams' planned role in controlling the company and its assets;

e.  committed acts of expense account and compensation abuse, as described above;

f.  misled investors as to the financial condition and prospects of Holiday RV; and

g.  Otherwise breached his fiduciary duties by the misconduct and misrepresentations described herein.

82. As a direct and proximate result of the foregoing breaches of fiduciary duty, the plaintiff Doerge suffered damages in an amount in excess of $500,000, representing a loss of its investment, plus costs and attorney's fees.

83. Doerge Fund incurred damages as alleged herein in its individual capacity, distinct from Holiday RV's other shareholders, and separate and apart from the decline and value of their shares which also resulted from the defendant's misconduct.

84. In breaching his fiduciary duties Lemonis acted with outrageous disregard for the rights and interests of the creditors and investors of Holiday RV, particularly the plaintiffs herein, for his own personal financial gain.

WHEREFORE, the plaintiff Doerge Capital Collateralized Bridge Fund prays for judgment against the Defendant Marcus Lemonis in an amount commensurate with the proofs herein, in excess of $500,000, as compensatory damages, plus $2,000,000 in punitive damages, plus costs of suit.

## COUNT III

(Doerge Fund v. Freedom Roads – Successor Liability)

85. The Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 62, as paragraph 85 of Count III as though fully set forth herein.

86. The Plaintiff repeats and realleges the allegations contained in paragraphs 64 through 75, as paragraph 86 of Count III as though fully set forth herein.

87. As a result of the foregoing, the plaintiff Doerge fund is owed a sum in excess of $500,000 by Holiday RV Superstores, Inc., which claim, as a result of Holiday RV's insolvency and subsequent bankruptcy, remains unsatisfied.

88. Defendant Freedom Roads LLC (f\k\a Holiday Holdings LLC) is a mere continuation of Holiday RV, and\or has *de facto* merged with Holiday RV, by reason of the following facts:

      a)    Freedom Roads LLC has assumed ownership and control of, on information and belief, all or substantially all of Holiday RV's assets;

      b)    there is a continuity of the business enterprise between Holiday RV and Freedom Roads LLC, including continuity of management, employees, location, general business operations and assets;

      c)    there is a continuity of shareholders\owners;

      d)    Holiday RV has ceased operations and is to dissolve since Freedom Roads LLC has assumed ownership and control of Holiday RV's assets;

      e)    Freedom Roads LLC has, on information and belief, assumed those liabilities and obligations necessary for the uninterrupted continuation of Holiday RV's business.

89. As such , and by reason of the foregoing facts, Freedom Roads LLC is liable for Doerge Fund's unsatisfied claim.

WHEREFORE, the plaintiff Doerge Capital Collateralized Bridge Fund prays for judgment against the Defendant Freedom Roads LLC in an amount commensurate with the proofs herein, in excess of $500,000, as compensatory damages, plus costs.

## COUNT IV

(Davis v. Lemonis – Fraud )

90.    Plaintiff Ernest Davis, Jr. repeats and realleges the allegations contained in Paragraphs 1 through 62 as paragraph 90 of Count IV, as though fully set forth herein.

91. Prior to March 1, 2000, Davis owned and/or controlled the shares of Little Valley Auto and RV Sales, Inc. ("Little Valley") which operated a recreational vehicle dealership in Prosperity, West Virginia.

92. On March 1, 2000, Davis and Holiday RV entered into a certain Stock Purchase Agreement, whereby Davis transferred certain stock Little Valley Auto to Holiday RV in exchange for a sum of cash and a convertible promissory note in the amount of $1,731,919.60.

93. The convertible promissory note was by its terms convertible at the holder's option to common shares of Holiday RV, according to a specified formula.

94. In or about April 2001, Davis entered into discussions with Holiday RV, including discussions with Defendant Lemonis, pursuant to which he was induced to convert his convertible promissory note to common shares of Holiday RV.

95. Pursuant to his debt conversion agreement with Holiday RV, Davis received 500,000 common shares of Holiday RV stock.

96. Pursuant to the terms of his agreement with Holiday RV, Holiday RV was to register Davis' shares "as promptly as practicable" and was to use "commercially reasonably efforts" to cause such shares to be registered for public sale no later than the 45th day following the closing date.

97. Holiday RV had no intent to register the stock for public sale as soon as practicable, and did not use commercially reasonable efforts to affect such registration and in fact did not cause the shares to be registered with the Securities and Exchange Commission for public sale until June 4, 2002, after the company was nearly bankrupt, and the stock had a market value of about 50 cents per share.

98. As a result, nearly Davis' entire investment was lost in the Holiday RV bankruptcy.

99. The dealership known as Little Valley was subsequently sold in a transaction which was negotiated by Lemonis, notwithstanding that those assets were owned by Holiday RV and notwithstanding that Lemonis' employment with Holiday RV had been terminated.

100.   On information and belief, the proceeds from the sale were funneled to Adams, pursuant to the plan and scheme between Adams and Lemonis, as hereinabove described.

101.   From the time Davis sold his shares in Little Valley to Holiday RV, to the time he converted his promissory notes to common stock in Holiday RV, to the bankruptcy filing of Holiday RV, at no time did Lemonis or anyone else inform Davis of the fraudulent plan and scheme to transfer Holiday RV's assets to Adams' privately held company.

102.  Lemonis concealed from Davis (and other investors and creditors of Holiday RV) the plan and scheme between himself and Adams as hereinabove described, and misrepresented the true facts in his statements to Davis, knowing his statements to be false.

103.  Lemonis misrepresented these facts to Davis intending to induce Davis' reliance, and agreement to convert his note to stock in Holiday RV.

104.  Davis believed Lemonis' statements to be true, and in reliance upon Lemonis' statements, and his silence in respect of the scheme with Adams, Davis converted his promissory note to Holiday RV common stock.

105.  As a direct and proximate result of Lemonis' fraud and scheme to defraud as alleged, herein, Davis' investment was lost, to his loss and damage in an amount in excess of $1,500,000, including interest, costs and attorney's fees.

106.  Davis incurred damages as alleged herein in his individual capacity, distinct from Holiday RV shareholders, and separate and apart from the decline and value of their shares.

107.  In perpetrating this fraudulent scheme, Lemonis acted with outrageous disregard for the rights and interests of the creditors and investors of Holiday RV, particularly the plaintiffs herein, for his own personal financial gain.

WHEREFORE, the plaintiff Earnest Davis Jr. prays for judgment against the Defendant Marcus Lemonis in an amount commensurate with the proofs herein, in excess of $1,500,000, as compensatory damages, plus $3,000,000 in punitive damages, plus costs.

## COUNT V

### (Davis v. Lemonis – Fiduciary Duty)

108. Plaintiff Ernest Davis, Jr. repeats and realleges the allegations contained in Paragraph 1 through 62 as paragraph 108 of Count IV, as though fully set forth herein.

109. Plaintiff Ernest Davis, Jr. repeats and realleges the allegations contained in Paragraphs 91 through 104 of Count IV as paragraph 104 of Count V, as though fully set forth herein.

110. As Holiday RV approached insolvency, which occurred no later than July 2002, when Holiday RV's quarterly report to the Securities & Exchange Commission expressed concern about its viability as a going concern, Lemonis as Chief Executive Officer and Chairman of the Board of Directors owed a fiduciary duty to the investors and creditors of Holiday RV to act with the utmost fidelity, loyalty and good faith.

111. Notwithstanding his fiduciary duties, and in breach thereof, Lemonis committed one or more of the following wrongful acts:

       a. failed to disclose his plan to "take the company private";

       b. worked on a secret plan to transfer Holiday RV's assets to Steve Adams entity Holiday Holdings, LLC;

       c. negotiated for the sale of Holiday RV's assets, even after his position as CEO and Chairman of the Board with Holiday RV had terminated;

       d. committed acts of expense account and compensation abuse, as described above; and

       e. misled investors as to the financial condition and prospects of Holiday RV.

21

112.   As a direct and proximate result of the foregoing breaches of fiduciary duty, the plaintiff Ernest Davis, Jr. suffered damages in an amount in excess of $500,000, representing a loss of its investment, plus costs and attorney's fees.

113.   Davis incurred damages as alleged herein in his individual capacity, distinct from Holiday RV shareholders, and separate and apart from the decline and value of their shares.

114.   In breaching his fiduciary duties Lemonis acted with outrageous disregard for the rights and interests of the creditors and investors of Holiday RV, particularly the plaintiffs herein, for his own personal financial gain.

WHEREFORE, the plaintiff Earnest Davis Jr. prays for judgment against the Defendant Marcus Lemonis in an amount commensurate with the proofs herein, in excess of $1,500,000, as compensatory damages, plus $3,000,000 in punitive damages, plus costs.

## COUNT VI

### (Davis v. Freedom Roads – Successor Liability)

115.   The Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 62, as paragraph 115 of Count VI as though fully set forth herein.

116.   The Plaintiff repeats and realleges the allegations contained in paragraphs 91 through 104, as paragraph 115 of Count VI as though fully set forth herein.

117.   As a result of the foregoing, the plaintiff Davis is owed a sum in excess of $500,000 by Holiday RV Superstores, Inc., which claim, as a result of Holiday RV's insolvency and subsequent bankruptcy, remains unsatisfied.

118.   Defendant Freedom Roads LLC (f\k\a Holiday Holdings LLC) is a mere

continuation of Holiday RV, and\or has *de facto* merged with Holiday RV, by reason of the following facts:

a)      Freedom Roads LLC has assumed ownership and control of, on information and belief, all or substantially all of Holiday RV's assets;

b)      there is a continuity of the business enterprise between Holiday RV and Freedom Roads LLC, including continuity of management, employees, location, general business operations and assets;

c)      there is a continuity of shareholders\owners;

d)      Holiday RV has ceased operations and is to dissolve since Freedom Roads LLC has assumed ownership and control of Holiday RV's assets;

e)      Freedom Roads LLC has, on information and belief, assumed those liabilities and obligations necessary for the uninterrupted continuation of Holiday RV's business.

119.   As such , and by reason of the foregoing facts, Freedom Roads LLC is liable for Davis' unsatisfied claim.

WHEREFORE, the plaintiff Earnest Davis Jr. prays for judgment against the Defendant Freedom Roads LLC in an amount commensurate with the proofs herein, in excess of $1,500,000, as compensatory damages, plus costs.

## COUNT VII

(Alonso v. Lemonis – Fraud)

120.   The plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 62 as paragraph 120 of Count VII, as though fully set forth herein.

121.   Prior to January 11, 2000, Plaintiffs Francisco Alonso and Armando Alonso, who are brothers, owned and/or controlled the shares of County Line Select Cars, Inc., which operated certain recreational vehicle dealerships located in Ocala, Florida and Inverness, Florida.

122.   In or about January 11, 2000, the Alonsos entered into an agreement to sell their interest in County Line Select Cars, Inc. to Holiday RV in exchange for a sum of cash, plus a convertible promissory note in the amount of $1,500,000.

123.   The convertible promissory note was by its terms convertible at the holder's option to common shares of Holiday RV, according to a specified formula.

124.   In or about January 11, 2001, plaintiff Armando Alonso, on behalf of himself and his brother Francisco Alonso, entered into discussions with Holiday RV, including discussions with Defendant Lemonis, pursuant to which he was induced to convert the convertible promissory notes to common shares of Holiday RV.

125.   As part of these discussions, Marcus Lemonis stated to Armando Alonso that if the Alonsos would convert their promissory note, he (Lemonis) would make sure that they receive at least $3.05 per share for the Holiday RV stock.

126.   Also as part of these discussions, Lemonis made various statements concerning the per share price and the prospects for increases in per share price of Holiday RV stock, for the purpose of convincing the Alonsos that the conversion of their promissory note would result in a much greater return then that offered by the promissory notes in their then present form.

127.   Pursuant to the conversion of the convertible promissory note to common stock, the Alonsos received certain common shares of Holiday RV stock.

128.   Pursuant to the terms of their agreement with Holiday RV, Holiday RV was to register the Alonso shares as promptly as practicable and was to use commercially reasonable efforts to cause such shares to be registered for public sale as promptly as practicable.

129.   Holiday RV and Lemonis had no intent to register the stock for public sale as soon as practicable, and did not use commercially reasonable efforts to affect such registration and in fact did not cause the shares to be registered with the Securities and Exchange Commission for public sale promptly, or in a commercially reasonable manner.

130.   As a result, the Alonsos were not able to sell their shares and nearly the Alonsos entire investment was lost in the Holiday RV bankruptcy.

131.   From the time the Alonsos sold their interest in County Line Select Cars, Inc. to Holiday RV, to the time they converted their convertible promissory note to common stock in Holiday RV, to the bankruptcy filing of Holiday RV, at no time did Lemonis or anyone else inform the Alonsos of the fraudulent plan and scheme to transfer Holiday RV's assets to Adams' privately held company.

132.   Lemonis concealed from the Alonsos (and other investors and creditors of Holiday RV) the plan and scheme between himself and Adams as hereinabove described, and misrepresented the true facts in his statements to the Alonsos, knowing his statements to be false.

133.   Lemonis misrepresented these facts to the Alonsos intending to induce their reliance, and agreement to convert their note to stock in Holiday RV.

139.    The plaintiffs repeat and reallege the allegations contained in paragraph 121 through 132 of Count VII as paragraph 139 of Count VIII, as though fully set forth herein.

140.    As Holiday RV approached insolvency, which occurred no later than July 2002, when Holiday RV's quarterly report to the Securities & Exchange Commission expressed concern about its viability as a going concern, Lemonis as Chief Executive Officer and Chairman of the Board of Directors owed a fiduciary duty to the investors and creditors of Holiday RV to act with the utmost fidelity, loyalty and good faith.

141.    Notwithstanding his fiduciary duties, and in breach thereof, Lemonis committed one or more of the following wrongful acts:

>     a.    failed to disclose his plan to "take the company private";
>
>     b.    worked on a secret plan to transfer Holiday RV's assets to Steve Adams' company, Holiday Holdings, LLC;
>
>     c.    negotiated for the sale of Holiday RV's assets, even after his position as CEO and Chairman of the Board with Holiday RV had terminated;
>
>     d.    Failed to disclose Adams' planned role in controlling the company and its assets;
>
>     e.    committed acts of expense account and compensation abuse, as described above;
>
>     f.    misled investors as to the financial condition and prospects of Holiday RV; and
>
>     g.    Otherwise breached his fiduciary duties by the misconduct and misrepresentations described herein.

142.    As a direct and proximate result of the foregoing breaches of fiduciary duty, the plaintiffs Armando Alonso and Francisco Alonso suffered damages in an amount in excess of $1,700,000, representing a loss of their investment, plus costs and attorney's fees.

143.    The Alonsos incurred damages as alleged herein in their individual capacity, distinct from Holiday RV shareholders, and separate and apart from the decline and value of their shares.

144.    In breaching his fiduciary duties Lemonis acted with outrageous disregard for the rights and interests of the creditors and investors of Holiday RV, particularly the plaintiffs herein, for his own personal financial gain.

WHEREFORE, the plaintiffs Armando Alonso and Francisco Alonso pray for judgment against the Defendant Marcus Lemonis in an amount commensurate with the proofs herein, in excess of $1,700,000, as compensatory damages, plus $3,400,000 in punitive damages, plus costs.

## COUNT IX

### (Alonsos v. Freedom Roads – Successor Liability)

145.    The Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 62, as paragraph 145 of Count XI as though fully set forth herein.

146.    The Plaintiffs repeat and reallege the allegations contained in paragraphs 121 through 132, as paragraph 146 of Count XI as though fully set forth herein.

147.    As a result of the foregoing, the plaintiffs Armando and Francisco Alonso are owed a sum in excess of $1,500,000 by Holiday RV Superstores, Inc., which claim, as a result of Holiday RV's insolvency and subsequent bankruptcy, remains unsatisfied.

## COUNT X

### (Hall v. Lemonis – Fraud)

150.   The Plaintiffs repeat and reallege the allegations contained in paragraph 1 through 62 as paragraph 150 of Count X, as though fully set forth herein.

151.   Prior to January 11, 2000, Plaintiff Thomas Hall owned and/or controlled the shares of Halls Campers and Motor Homes, Inc., which operated a recreational vehicle dealership located in Lexington, Kentucky.

152.   In or about January 11, 2000, Hall entered into an agreement to sell his interest in Halls Campers and Motor Homes, Inc. to Holiday RV in exchange for certain shares of Holiday RV common stock.

153.   Pursuant to the terms of their agreement with Holiday RV, Holiday RV was to register the Hall shares as promptly as practicable and was to use commercially reasonable efforts to cause such shares to be registered for public sale as promptly as practicable.

154.   Holiday RV and Lemonis had no intent to register the stock for public sale as soon as practicable, and did not use commercially reasonable efforts to affect such registration and in fact did not cause the shares to be registered with the Securities and Exchange Commission for public sale promptly, or in a commercially reasonable manner.

155.   As a result, Hall did not sell his shares and nearly Hall's entire investment was lost in the Holiday RV bankruptcy.

156.   From the time Hall sold his interest in  Halls Campers and Motor Homes, Inc. to Holiday RV, to the time to the bankruptcy filing of Holiday RV, at no time did

30

Lemonis or anyone else inform Hall of the fraudulent plan and scheme to transfer Holiday RV's assets to Adams' privately held company.

157.    As a direct and proximate result of Lemonis' fraud and scheme to defraud as alleged herein, Hall lost a substantial portion of his investment in Holiday RV, to his loss and damage in an amount in excess of $1.5 million, including interest, costs and attorney's fees.

158.    Thomas Hall incurred damages as alleged herein in his individual capacity, distinct from Holiday RV shareholders, and separate and apart from the decline and value of their shares.

159.    In perpetuating this fraudulent scheme, Lemonis acted with outrageous disregard for the rights and interests of the creditors and investors of Holiday RV, particularly the plaintiffs herein, for his own personal financial gain.

WHEREFORE, the Plaintiff Thomas Hall prays for judgment in their favor and against the Defendant Marcus Lemonis in amount commensurate with the proofs, in excess of $1,500,000 as compensatory damages, plus punitive damages in an amount in excess of $3,000,000, plus costs.

## COUNT XI

(Hall v. Lemonis – Breach of Fiduciary Duty)

160.    The Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 62 as paragraph 160 of Count XI, as though fully set forth herein.

161.    The plaintiffs repeat and reallege the allegations contained in paragraphs 151 through 156 of Count XI as paragraph 161 of Count XI, as though fully set forth herein.

31

162.    As Holiday RV approached insolvency, which occurred no later than July 2002, when Holiday RV's quarterly report to the Securities & Exchange Commission expressed concern about its viability as a going concern, Lemonis as Chief Executive Officer and Chairman of the Board of Directors owed a fiduciary duty to the investors and creditors of Holiday RV to act with the utmost fidelity, loyalty and good faith.

163.    Notwithstanding his fiduciary duties, and in breach thereof, Lemonis committed one or more of the following wrongful acts:

a.    failed to disclose his plan to "take the company private";

b.    worked on a secret plan to transfer Holiday RV's assets to Steve Adams' company, Holiday Holdings, LLC;

c.    negotiated for the sale of Holiday RV's assets, even after his position as CEO and Chairman of the Board with Holiday RV had terminated;

d.    Failed to disclose Adams' planned role in controlling the company and its assets;

e.    committed acts of expense account and compensation abuse, as described above;

f.    misled investors as to the financial condition and prospects of Holiday RV; and

g.    Otherwise breached his fiduciary duties by the misconduct and misrepresentations described herein.

164.    As a direct and proximate result of the foregoing breaches of fiduciary duty, the plaintiff Thomas Hall suffered damages in an amount in excess of $1,700,000, representing a loss of their investment, plus costs and attorney's fees.

165.   Thomas Hall incurred damages as alleged herein in his individual capacity, distinct from Holiday RV shareholders, and separate and apart from the decline and value of their shares.

166.   In breaching his fiduciary duties Lemonis acted with outrageous disregard for the rights and interests of the creditors and investors of Holiday RV, particularly the plaintiffs herein, for his own personal financial gain.

WHEREFORE, the plaintiff Thomas Hall prays for judgment against the Defendant Marcus Lemonis in an amount commensurate with the proofs herein, in excess of $1,700,000, as compensatory damages, plus $3,400,000 in punitive damages, plus costs.

## COUNT XII

(Hall v. Freedom Roads – Successor Liability)

167.   The Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 62, as paragraph 167of Count XII as though fully set forth herein.

168.   The Plaintiff repeats and realleges the allegations contained in paragraphs 151 through 156, as paragraph 162 of Count XII as though fully set forth herein.

169.   As a result of the foregoing, the plaintiff Thomas Hall is owed a sum in excess of $1,500,000 by Holiday RV Superstores, Inc., which claim, as a result of Holiday RV's insolvency and subsequent bankruptcy, remains unsatisfied.

170.   Defendant Freedom Roads LLC (f\k\a Holiday Holdings LLC) is a mere continuation of Holiday RV, and\or has *de facto* merged with Holiday RV, by reason of the following facts:

33

a)    Freedom Roads LLC has assumed ownership and control of, on information and belief, all or substantially all of Holiday RV's assets;

b)    there is a continuity of the business enterprise between Holiday RV and Freedom Roads LLC, including continuity of management, employees, location, general business operations and assets;

c)    there is a continuity of shareholders\owners;

d)    Holiday RV has ceased operations and is to dissolve since Freedom Roads LLC has assumed ownership and control of Holiday RV's assets;

e)    Freedom Roads LLC has, on information and belief, assumed those liabilities and obligations necessary for the uninterrupted continuation of Holiday RV's business.

171.    As such , and by reason of the foregoing facts, Freedom Roads LLC is liable for Hall's unsatisfied claim.

WHEREFORE, the plaintiff Thomas Hall prays for judgment against the Defendant Freedom Roads LLC in an amount commensurate with the proofs herein, in excess of $1,700,000, as compensatory damages, plus costs.

DOERGE CAPITAL
COLLATERALIZED FUND L.P.
ARMANDO ALONSO
FRANCISCO ALONSO
ERNEST DAVIS, JR
THOMAS HALL

By: _____

One of their attorneys

Robert A. Carson
Christina B. Conlin
**Gould & Ratner**
222 N. LaSalle Street, Suite 800
Chicago, IL 60601
312-236-3003
Attorney No. 105960